[Civ. No. 34328. Fourth Dist., Div. Three. June 14, 1984.]

JAMES PHILIP GRIEVES et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
LEONARD L. FOX et al., Real Parties in Interest.

**COUNSEL**

Ruston & Nance and Catherine A. Vincent for Petitioners.

No appearance for Respondent.

Beam, DiCaro, D'Antony & Stafford, Joseph S. D'Antony, Harrington, Foxx, Dubrow, Canter & Keene, Dale B. Goldfarb, Edward R. Leonard, Mark W. Flory, Robert V. Wills and Daniel M. Hodes for Real Parties in Interest.

## OPINION

**TROTTER, P. J.**– The threshold issue before us is whether petitioners' first amended complaint states facts sufficient to constitute a cause of action for battery. Since the sufficiency of the complaint was tested in the trial court by means of demurrer, we accept as true all of its material factual allegations. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

On May 1, 1981, while pregnant, petitioner Cheryl Grieves discussed with her physician, Andrew M. Kenlon, M.D. (Kenlon), the possibility of undergoing a surgical procedure known as a tubal ligation[1] following the delivery of her child. On June 26, 1981, they discussed her desire the procedure not be performed if the child was born with any abnormalities. She gave birth to a daughter on September 8, 1981, and thereafter a tubal ligation was performed. Immediately following the surgery she was informed the newborn child had been diagnosed as having a genetic disorder, trisomy 18. Two months later the child died.

Petitioners Cheryl Grieves and her husband filed suit against Kenlon; Martin Luther Hospital (Hospital); Nandi Wijesinghe, M.D. (Wijesinghe), the assistant surgeon; and Leonard L. Fox, M.D. (Fox), a pediatrician; seeking general and special damages for medical malpractice, wrongful life and wrongful death. A demurrer was sustained with leave to amend, the grounds for which are not disclosed, and in April 1983 petitioners amended their complaint and added a sixth cause of action for battery. It is this cause of action which is central to our discussion.

Paragraphs 36 through 38 allege real parties' failure to advise petitioners of the child's abnormalities before performing the tubal ligation "deprived [Cheryl] of the opportunity to choose not to have the tubal ligation performed," and had she been so informed she "would not have consented to the tubal ligation . . ., and any consent given . . . did not constitute a knowledgeable or informed consent, and such tubal ligation constituted a

---

[1]The purpose of this procedure (for convenience generally performed immediately or soon after delivery) is to prevent any further pregnancies.

battery on the person of [Cheryl]." Paragraph 40 alleges, "[Cheryl] is informed and believes and thereon alleges that said defendants did the things herein alleged willfully, maliciously, fraudulently and oppressively. [Cheryl] is therefore entitled to exemplary damages and punitive damages pursuant to Civil Code section 3294 in an additional sum to be determined by the court." The prayer was also amended to include a request for punitive damages.

Wijesinghe filed a general demurrer to the sixth cause of action and a motion to strike paragraph 40 and the portion of the prayer seeking punitive damages. Kenlon filed a notice of intention to join in Wijesinghe's demurrer. Fox and Hospital jointly filed their own demurrer to the sixth cause of action on the ground it failed to state facts sufficient to constitute a cause of action and to entitle petitioners to punitive damages.[2] They also filed a motion to strike the entire complaint, the sixth cause of action, paragraph 40, the prayer for punitive damages, and any other allegations of punitive damages.

Following hearing on the demurrers and motions the court ruled: "The demurrers of defendants Fox, Martin Luther Hospital, and Wijesinghe to the sixth cause of action of the First Amended Complaint are sustained without leave to amend. The motion to strike of defendant Wijesinghe is moot. The motion to strike by defendants Fox and Martin Luther Hospital to the entire complaint is denied; the motion to strike the sixth cause of action and punitive damages is moot. The motion re joinder of defendant Kenlon is granted."[3]

Although petitioners request the order be vacated in its entirety, the thrust of their claim is the trial court abused its discretion in sustaining the demurrers. We note the trial court's ruling failed to indicate the grounds upon which the demurrers were sustained. ■ Since a demurrer does not lie to a *part* of a cause of action (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 807, p. 2418), petitioners' punitive damage allegations were not subject to real parties' demurrers. "There is no cause of action for punitive damages. Punitive or exemplary damages are remedies available to a party who can plead and prove the facts and circumstances [set forth in Civil

---

[2]The demurrer was actually made on four separate grounds: (1) It failed to state facts sufficient to constitute a cause of action; (2) it failed to state facts sufficient to constitute a cause of action entitling petitioners to receive punitive damages; (3) it is uncertain in that it cannot be ascertained from any of the allegations how petitioners are entitled to punitive damages; (4) it is uncertain in that it cannot be ascertained from any of the allegations as to what wrongdoing is alleged to have been done which would entitle petitioners to receive punitive damages.

[3]The trial court treated Kenlon's notice of joinder as a motion.

Code section 3294[4]]. . . . 'Punitive damages are merely incident to a cause of action, and can never constitute the basis thereof.' [quoting from *Gold v. Los Angeles Democratic League* (1975) 49 Cal.App.3d 365, 373, fn. 3 (122 Cal.Rptr. 732)]." (*Hilliard* v. *A. H. Robins Co.* (1983) 148 Cal.App.3d 374, 391 [196 Cal.Rptr. 117].) Consequently, the trial court's ruling could have pertained only to the demurrers made on the ground the sixth cause of action failed to state a cause of action for battery. The adequacy of the punitive damage allegations could, however, have been tested by motion to strike. (Cf. *Blegen* v. *Superior Court* (1981) 125 Cal.App.3d 959, 962 [178 Cal.Rptr. 470]; *Dawes* v. *Superior Court* (1980) 111 Cal.App.3d 82, 85 [168 Cal.Rptr. 319].)

In the absence of a transcript of the proceedings, we can only surmise that in ruling the motions to strike were moot the trial court presumed sustaining the demurrers to the sixth cause of action eliminated the issue of petitioners' entitlement to punitive damages. That notion may have been accurate, at least as to the cause of action for battery,[5] had the demurrers been properly sustained. Since we conclude they were not, we will address petitioners' right to punitive damages in light of real parties' motions to strike paragraph 40.

I

■ A surgical operation performed without informed consent is a technical battery. (*Berkey* v. *Anderson* (1969) 1 Cal.App.3d 790, 803 [82 Cal.Rptr. 67].) Although petitioners allege Cheryl consented to the postpartum surgery, they also state facts to indicate the consent was *conditioned* upon the delivery of a normal child.

Real parties, relying on *Cobbs* v. *Grant* (1972) 8 Cal.3d 229 [104 Cal.Rptr. 505, 502 P.2d 1], contend Cheryl consented to the identical operation which was performed, thus the cause of action may only be pleaded in negligence. In *Cobbs* our Supreme Court examined the trend towards categorizing failure to obtain informed consent as negligence: "Where a doctor obtains consent of the patient to perform one type of treatment and subsequently performs a substantially different treatment for which consent was not obtained, there is a clear case of battery. [Citations and examples omitted.]

---

[4]See footnotes 8 and 12, *infra*.

[5]Petitioners may be entitled to punitive damages under their fourth cause of action for wrongful life. (Cf. *Curlender* v. *Bio-Science Laboratories* (1980) 106 Cal.App.3d 811, 831 [165 Cal.Rptr. 477].)

"However, when an undisclosed potential complication results, the occurrence of which was not an integral part of the treatment procedure but merely a known risk, the courts are divided on the issue of whether this should be deemed to be a battery or negligence. [Citations and examples omitted.]

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"We agree with the majority trend. The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented. *When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present. However, when the patient consents to certain treatment and the doctor performs that treatment but an undisclosed inherent complication with a low probability occurs, no intentional deviation from the consent given appears*; rather, the doctor in obtaining consent may have failed to meet his due care duty to disclose pertinent information. In that situation the action should be pleaded in negligence." (*Id.*, at pp. 239-241, italics added.) Real parties contend their failure to inform petitioners of the newborn's abnormality prior to performing the surgery was not "a deviation from the consent given," but rather was an "undisclosed inherent complication" which, at most, represented "a failure to meet their due care duty to disclose pertinent information." We disagree and find their reliance on *Cobbs* to be misplaced. *Cobbs* refers to complications which *result* from a surgical procedure, not complications which occur *prior to* surgery. Moreover, a negligence theory as espoused by *Cobbs* would be predicated on a practitioner's breach of duty to advise of risk factors which accompany a consented-to surgery. Here we do not reach that issue since the sixth cause of action alleges only conditional consent.

Petitioners' first amended complaint is hardly a model pleading. The sixth cause of action contains allegations which sound in both negligence[6] and battery predicated on conditional consent. However, all petitioners need do at this stage of the lawsuit is inform real parties of their claims. Whether petitioners' consent was conditional is a factual question to be determined at trial. ■   We thus construe the sixth cause of action liberally and find it states Cheryl consented to a tubal ligation *only* upon the condition her baby was born without any abnormalities. These allegations are sufficient to apprise real parties of the issues they are to meet (see 3 Witkin, Cal.

---

[6]For example, by reason of its incorporation of the entire first cause of action, it alleges real parties "fell below the community standard of care and practice for medical practitioners in that [they] performed, or allowed to be performed, a tubal ligation on [Cheryl] without first confirming that [Cheryl's] baby had no abnormalities."

Procedure (2d ed. 1971) Pleading, § 829, p. 2436) and sufficient for a cause of action for battery.

## II

■ ■■■ We next decide whether paragraph 40 withstands the motions to strike.[7]

Real parties contend the allegations in paragraph 40 do not meet the pleading standards contemplated by Civil Code section 3294.[8] They argue allegations the defendants' conduct was wilful, malicious, fraudulent and oppressive are conclusory and not supported by any facts whatsoever.

■ The mere allegation an intentional tort was committed is not sufficient to warrant an award of punitive damages. (See *Taylor* v. *Superior Court, supra,* 24 Cal.3d 890, 894, citing Prosser, Law of Torts (4th ed. 1971) § 2, at pp. 9-10.) Not only must there be circumstances of oppression, fraud or malice, but facts must be alleged in the pleading to support such a claim. (*G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22, 29 [122 Cal.Rptr. 218].)[9]

---

[7]Although an order granting a motion to strike is not itself appealable and may be challenged on appeal from the final judgment, extraordinary relief is appropriate when it appears the trial court has deprived a party of an opportunity to plead his cause of action. (*Blegen* v. *Superior Court, supra,* 125 Cal.App.3d at p. 963; *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 894 [157 Cal.Rptr. 693, 598 P.2d 854].)

[8]Civil Code section 3294 provides, in pertinent part, as follows: "(a) In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

". . . . . . . . . . . . . . . . . . . . .

"(c) As used in this section, the following definitions shall apply:

"(1) 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or conduct which is carried on by the defendant with a conscious disregard of the rights or safety of others.

"(2) 'Oppression' means subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights.

"(3) 'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

[9]*Searle* addressed the sufficiency of punitive damage allegations raised by *demurrer.* The same issue was discussed in *Taylor* v. *Superior Court, supra,* 24 Cal.3d 890, following the sustaining of a demurrer as to the *prayer* for punitive damages (but see 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 807, p. 2418, stating a prayer is *not* subject to a demurrer). Notwithstanding, we reiterate our view the adequacy of punitive damage allegations may not properly be tested by demurrer. *Searle* and *Taylor* are not necessarily inconsistent with our observation of this procedural fine point since both cases examined only the *factual allegations* essential to a recovery of punitive damages. Neither discussed the propriety of a demurrer as a means to test the allegations and are therefore not authority for this questionable practice. However, the pleading requirements discussed in *Searle* are applicable to motions to strike. (See, e.g., *Blegen* v. *Superior Court, supra,* 125 Cal.App.3d 959, 962.)

Throughout their amended complaint petitioners refer to real parties' negligence. They make not a single assertion of intentional conduct. In one instance only do they allege conduct which may be very liberally construed as wilful or malicious, i.e., that defendants knew or should have known Cheryl desired a tubal ligation *only if* the baby was born without any abnormalities. But the sentence immediately following alleges in failing to effectuate Cheryl's desire, real parties' conduct "fell below the community standard of care and practice," i.e., a negligence standard. Thus, even if we interpret real parties' alleged "knowledge" as describing a state of mind from which a conscious disregard of petitioner's rights might be inferred— "a state of mind which would sustain an award of punitive damages . . ." (see *Perkins* v. *Superior Court* (1981) 117 Cal.App.3d 1, 6 [172 Cal.Rptr. 427]), we cannot ignore the recurring theme underlying petitioners' claim, i.e., that real parties' conduct was, at most, negligent.[10]

Further, Hospital contends there are insufficient allegations to entitle petitioners to punitive damages against Hospital by reason of its corporate status.[11]

Civil Code section 3294, subdivision (b)[12] sets forth the circumstances under which an employer may be held liable for punitive damages based upon acts of an employee. They include the employer's (1) advance knowledge of the employee's unfitness; (2) authorization or ratification of the wrongful conduct; and (3) personal culpability. Moreover, a corporate employer may be liable only if the knowledge, authorization, ratification or act was on the part of an officer, director or managing agent of the corporation. (See also *Ebaugh* v. *Rabkin* (1972) 22 Cal.App.3d 891, 895 [99 Cal.Rptr. 706].)

Petitioners claim they satisfied the foregoing requirement by alleging Hospital was negligent and careless in the hiring of the other defendants; un-

---

[10]Petitioners contend they stated facts entitling them to an award of punitive damages by virtue of their allegations in paragraph 29 of the fourth cause of action for wrongful life, wherein they claim real parties Kenlon and Hospital, "in conscious disregard of the health, safety, and well-being of plaintiff and the female child," administered certain test procedures (i.e., an ultrasound test) knowing the results were likely to be inaccurate. However, those facts do not support petitioners' claim for punitive damages under the sixth cause of action nor are they relevant to the motion to strike paragraph 40.

[11]Hospital made this argument only in support of its demurrer. However, we view it as having been made in support of the motion to strike paragraph 40.

[12]Civil Code section 3294, subdivision (b) provides: "(b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."

dertook to carry out the care and treatment of Cheryl; and allowed the tubal ligation to be performed without confirming the baby had no abnormalities. However, we fail to see how any of those allegations sets forth facts to show Hospital's advance knowledge, authorization or ratification. Also, absent from the complaint is any assertion an officer, director or managing agent of Hospital was personally responsible for any of the acts allegedly performed by Hospital.

For all the foregoing reasons we conclude the trial court should have granted real parties' motions to strike paragraph 40 *with leave to amend.* Code of Civil Procedure section 576 authorizes a judge at any time, "in the furtherance of justice, and upon such terms as may be proper, [to] allow the amendment of any pleading . . . ." The rationale for granting leave to amend a complaint after sustaining a demurrer is pertinent: "An amendment should be allowed where the defect, though one of *substance,* may possibly be cured by supplying omitted allegations, and the plaintiff has not had a fair opportunity to do so, as where the demurrer was sustained to his first complaint." (Italics in original, 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 845, p. 2450.) Here petitioners have already amended their complaint; however, the sixth cause of action, which includes paragraph 40, was added in the amended complaint and challenged only once. Thus, they should be afforded an opportunity for amendment.

Let a peremptory writ of mandate issue directing the trial court to vacate its order sustaining the demurrers and to overrule the demurrers to the sixth cause of action and grant the motions to strike paragraph 40 with leave to amend.

Wallin, J., and Sonenshine, J., concurred.