[No. B146142. Second Dist., Div. One. June 13, 2002.]

VEISNA KONG, Plaintiff and Appellant, v.
CITY OF HAWAIIAN GARDENS REDEVELOPMENT AGENCY et al.,
Defendants and Respondents.

## COUNSEL

Anthony P. Parrille & Associates and Anthony P. Parrille for Plaintiff and Appellant.

Woodruff, Spradlin & Smart, M. Lois Bobak and Roberta A. Kraus for Defendants and Respondents.

## OPINION

SPENCER, P. J.— In this inverse condemnation action, plaintiff Veisna Kong, doing business as Bartha's Donuts, appeals from an order sustaining a demurrer filed by defendants City of Hawaiian Gardens Redevelopment Agency and City of Hawaiian Gardens[1] without leave to amend and dismissing plaintiff's first amended complaint.

Plaintiff contends he alleged facts establishing causes of action for inverse condemnation and for precondemnation damages. Although the trial court correctly sustained defendants' demurrer, we conclude that leave to amend must be granted. We therefore reverse the order of dismissal.

### STATEMENT OF FACTS

Inasmuch as this is an appeal from an order of dismissal entered after the sustaining of a demurrer without leave to amend, we accept as true all

---

[1] That portion of the order sustaining the demurrer without leave to amend is not appealable. The propriety of the trial court's ruling on the demurrer is subject to review on appeal from the appealable order of dismissal, however. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 611 [107 Cal.Rptr.2d 489].)

material factual allegations contained in the complaint. (*Wright v. City of Los Angeles* (2001) 93 Cal.App.4th 683, 685 [113 Cal.Rptr.2d 352].) ▪▪▪ The following facts unfold from a reading of plaintiff's first amended complaint and the documents attached to and expressly incorporated therein by reference:[2]

Prior to August 1993, R. M. Veady (Veady) owned the commercial property commonly known as 119131/2 East Carson Street (the premises) in Hawaiian Gardens, California. Veady leased the premises to Frank and Dorothy Bartha (the Barthas) at an unknown point in time and for an unknown period of time.[3] In a commercial lease dated January 1, 1992, the Barthas subleased the premises to Myrna Lynn Nieto and John Nieto, Jr. (the Nietos), who were to operate a retail donut store on the premises. The term of the sublease was five years, ending on December 31, 1996. The Nietos were given an option to extend the sublease for one additional two-year period to December 31, 1998, under certain terms and conditions.

On February 1, 1993, the Nietos assigned their sublease interest in the premises to plaintiff Veisna Kong and Sinarun Khiev. Plaintiff and Khiev, in turn, executed an assumption of the lease. The Barthas gave their consent to the assignment on February 17. Plaintiff thus became the sublessee for the remaining term of the sublease and the option period.

With regard to condemnation, section 13 of the original sublease provided: "If the Premises . . . are taken by the power of eminent domain, or sold by Landlord under the threat of exercise of said power (all of which is herein referred to as 'condemnation'), this Lease shall terminate . . . as of the date the condemning authority takes title or possession which ever occurs first. . . ."

Following the assignment of the lease, plaintiff continued to operate the already established donut store, which had repeat patronage and steadily generated business goodwill. Plaintiff purchased inventory and supplies as well.

Prior to February 1993, the City of Hawaiian Gardens Redevelopment Agency (Agency) designated the premises as part of a redevelopment project

---

[2]As noted in *Cohen v. Ratinoff* (1983) 147 Cal.App.3d 321, 327 [195 Cal.Rptr. 84], when " 'a written instrument . . . is attached to a pleading as an exhibit and incorporated into it by proper reference, the court may, upon demurrer . . . , examine the exhibit and treat the pleader's allegations of its legal effect as surplusage.' " Thus, we "take notice of exhibits attached to the complaint[]. If facts appearing in the exhibits contradict those alleged, the facts in the exhibits take precedence." (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447 [104 Cal.Rptr.2d 239].)

[3]The master lease between Veady and the Barthas is not attached to the operative complaint.

area to be acquired for a redevelopment project. Around August 14, 1993, the Agency and/or the City of Hawaiian Gardens (City) acquired the premises from Veady through its power of eminent domain or by threatening to use its power of eminent domain for public purposes.[4]

In a letter dated January 20, 1994, and addressed to plaintiff, Attorney Graham A. Ritchie stated: "I represent the . . . Agency which has acquired the property on which Bartha's Donuts is located. In order to make an appropriate offer to you with respect to the relocation of that business it is necessary to complete an analysis of the goodwill of the business and any damage to that goodwill resulting from the proposed relocation." Attorney Ritchie requested that plaintiff contact a specific individual and make arrangements to provide that person with the information necessary to properly value the goodwill of his business.

In a notice to vacate dated March 25, 1994, the Agency informed plaintiff that he had 90 days to "quit, vacate, and deliver up . . . possession of the premises." Defendants thereafter started to evaluate the goodwill of plaintiff's business.

In a certified letter dated May 18, 1994, Beryl Weiner, counsel for Dr. Irving Moskowitz, advised plaintiff that effective May 5, the Agency had transferred title to the premises to Dr. Moskowitz. He was the purchaser of the premises and developer of the redevelopment project under a disposition and development agreement with the Agency. The transfer of the premises to Dr. Moskowitz was for a public purpose.

In her correspondence to plaintiff, Attorney Weiner referenced the Agency's notice to vacate and noted that the 90-day period would end on June 23, 1994. Counsel further stated, "You were previously informed that Dr. Moskowitz is willing to permit you to remain in possession for a longer period of time, subject to your vacating the premises on a 6-month notice. However, until an agreement in writing is signed between Dr. Moskowitz and you, you will be required to vacate the premises by June 23, 1994." Thus, inasmuch as Dr. Moskowitz was not yet ready to develop the premises, he was willing to permit plaintiff to remain on site until such time as he was ready to use the premises for his public project.

On June 10, 1994, Kalian & Associates, the Agency's relocation agent, sent Frank Bartha a letter confirming a June 6 conversation. A copy of the letter was sent to plaintiff. The relocation agent apprised Mr. Bartha that a

---

[4]It appears that the premises were part of a larger commercial shopping center.

letter regarding a change in ownership of the premises had been sent to plaintiff in error by Dr. Moskowitz's attorney.[5] The letter should have been sent to Mr. Bartha instead, in that he was the master lessee. With respect to relocation benefits, the relocation agent stated that "[a]s far as relocation benefits are concerned, I stated to you that in that letter an offer of extension of tenancy was made to Mr. Kong. I suggested that you should meet with Mr. Kong and find our [*sic*] if he is planning to pursue this offer of extension. You would be involved in this process since you are the master lessee. If you and Mr. Kong agree with the new owner on the extension terms, you will continue to pay rent and Mr. Kong can continue in business at that location. At the conclusion of the extension term, Mr. Kong will be eligible for relocation benefits. At that time the remaining term of your lease will be evaluated and a determination will be made if it has any value."

The relocation agent informed Mr. Bartha that, since their conversation, he had met with plaintiff who was "very interested in applying for the extension past June 23, 1994." Plaintiff told the relocation agent that he had contacted Mr. Bartha and the new owner in order to make the extension arrangement. The relocation agent sent a copy of its June 10 letter to plaintiff. In reliance on the Agency's representations that plaintiff had a right to be compensated under the law of eminent domain, plaintiff did not commence an action against defendants.

On June 21, 1994, the Barthas entered into a one-year lease with Dr. Moskowitz, which could be terminated on six months' notice.[6] Plaintiff remained on the premises but did not agree to any alteration of his sublease rights with the Barthas.

In light of the Agency's promise of compensation and the terms of his sublease agreement, plaintiff continued to occupy the premises and to pay rent. Thereafter, Dr. Moskowitz commenced construction of a casino. He did not need that portion of the premises occupied by plaintiffs until 1999, however. On April 6, 1999, Dr. Moskowitz notified Mr. Bartha and plaintiff by certified letter that he was terminating the lease agreement, which he and Mr. Bartha had signed in June 1994, "as of six months from the date of this notice." Plaintiff remained in continuous possession of the premises until December 21, 1999, when Dr. Moskowitz forcibly evicted him. Dr. Moskowitz thereafter demolished the building and constructed a parking area for his casino on what used to be known as Bartha's Donuts. The Agency did

---

[5]The relocation agent appears to be referring to Attorney Weiner's May 18, 1994 letter.

[6]The lease between Dr. Moskowitz and Mr. Bartha is not attached to the operative complaint.

not file an eminent domain proceeding or pay plaintiff just compensation for loss of business goodwill, improvements and inventory.

### Procedural Background

Plaintiff instituted this action on March 8, 2000. Defendants' subsequent demurrer was sustained with leave to amend.

On June 2, 2000, plaintiff filed his operative first amended complaint, in which he purported to state two causes of action. In his first cause of action for inverse condemnation, plaintiff sought compensation for loss of goodwill, improvements pertaining to the realty, and loss of inventory. Plaintiff did not claim compensation for his sublease. In his purported second cause of action, plaintiff claimed precondemnation damages.

Defendants demurred to the amended pleading on the grounds that (1) plaintiff's entire action was barred by the statute of limitations set forth in Code of Civil Procedure section 338, subdivision (j);[7] (2) there was no causal connection between the Agency's acquisition of the property and plaintiff's displacement; (3) the first cause of action for inverse condemnation was barred, in that there is no value remaining in the sublease agreement; and (4) the second cause of action fails to state a cause of action for precondemnation damages.

The trial court's tentative ruling on defendants' demurrer was to "[s]ustain, without leave to amend" and "dismiss action."[8] On July 27, 2000, the trial court held a hearing on defendants' demurrer to plaintiff's first amended complaint. After entertaining the arguments of counsel, the trial court stated, "The tentative will be the order."

---

[7] All statutory references hereinafter are to the Code of Civil Procedure.

[8] The trial court explained its tentative ruling as follows:

"1. The statute of limitations was probably tolled until the date of ouster, assuming there is any cause of action at all.

"2. Plaintiff has not stated a claim for a taking. The City acquired the property for purposes of the project in August of 1993. Plaintiff's existing lease was terminated at that time. The plaintiff's maximum expectancy under the original term lease was December 31, 1998. Plaintiff stayed on the property until December 21, 1999, and thus received the full benefit of his bargain, as it existed at the time the property was acquired.

"Plaintiff is correct that ultimately he was required to move as a result of the project, and he asserts a goodwill claim. Plaintiff asserts that the developer, Moskowitz, is merely the surrogate for the City; that this was a continuous project, lasting through both the City's and Moskowitz's ownership. This cuts both ways. If the City had never sold to Moskowitz, but had instead kept the property, wouldn't it be apparent that plaintiff had no claim once the original term of the lease expired?

"3. Plaintiff has not stated a claim for precondemnation damages."

Thereafter, on September 20, 2000, the trial court signed an order sustaining defendants' demurrer without leave to amend and dismissing this action with prejudice. The order specified that the demurrer was sustained "for the following reasons: [¶] 1. Plaintiff has not stated a claim for an actionable taking. The Agency acquired the property for purposes of the project in August 1993. Plaintiff's maximum expectancy under the original term sublease was December 31, 1998. Plaintiff remained on the property until December 21, 1999, and thus received the full benefit of his bargain under the original term sublease as it existed at the time the property was acquired. [¶] 2. Plaintiff has not stated a claim for precondemnation damages."[9]

## DISCUSSION

### Standard of Review

A demurrer tests the sufficiency of the plaintiff's complaint, i.e., whether it states facts sufficient to constitute a cause of action upon which relief may be based. (§ 430.10, subd. (e); *Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 841-842 [73 Cal.Rptr.2d 427].) In determining whether the complaint states facts sufficient to constitute a cause of action, the trial court may consider all material facts pleaded in the complaint and those arising by reasonable implication therefrom; it may not consider contentions, deductions or conclusions of fact or law. (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 638 [29 Cal.Rptr.2d 152, 871 P.2d 204]; *Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598].) The trial court also may consider matters of which it may take judicial notice. (§ 430.30, subd. (a); *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459 [80 Cal.Rptr.2d 329].) A demurrer should not be sustained without leave to amend if the complaint, liberally construed, can state a cause of action under any theory or if there is a reasonable possibility the defect can be cured by amendment. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92,

---

[9]The parties disagree as to whether the trial court adopted its tentative decision, and the factual findings made therein, as its final decision. Although the trial court unequivocally stated at the hearing on the demurrer that "[t]he tentative will be the order," the findings contained in its subsequent written order sustaining defendants' demurrer without leave to amend and dismissing this action are not identical to the findings set forth in the tentative. We conclude that the trial court's signed order controls. (See *Board of Supervisors v. Superior Court* (1995) 33 Cal.App.4th 1724, 1737 [39 Cal.Rptr.2d 906]; *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 756, fn. 1 [270 Cal.Rptr. 326].) Plaintiff's reliance on the findings of fact set forth in the court's tentative decision, but not included in its signed order, therefore is misplaced. In any event, we review the trial court's result, not its reasons. (*Economic Empowerment Foundation v. Quackenbush* (1997) 57 Cal.App.4th 677, 692, fn. 13 [67 Cal.Rptr.2d 323].)

831 P.2d 317]; *Jager v. County of Alameda* (1992) 8 Cal.App.4th 294, 297 [10 Cal.Rptr.2d 293].)

■ On appeal, we review the trial court's sustaining of a demurrer without leave to amend de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law and applying the abuse of discretion standard in reviewing the trial court's denial of leave to amend. (*Montclair Parkowners Assn. v. City of Montclair, supra,* 76 Cal.App.4th at p. 790; *Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497-1498 [57 Cal.Rptr.2d 406].) Plaintiff bears the burden of proving the trial court erred in sustaining the demurrer or abused its discretion in denying leave to amend. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 68 Cal.App.4th at p. 459; *Coutin v. Lucas* (1990) 220 Cal.App.3d 1016, 1020 [270 Cal.Rptr. 93].)

*Inverse Condemnation*

Our federal and state Constitutions proscribe the governmental taking of private property without just compensation. (U.S. Const., Amend. V; Cal. Const., art. I, § 19.) ■ Plaintiff maintains that the Agency's acquisition of the premises amounted to a taking for a public purpose and that he is entitled to compensation for loss of goodwill, improvements pertaining to the realty, and loss of inventory. In defendants' view, there was no taking, in that plaintiff's sublease with the Barthas naturally expired on its own terms. ■ ■ ■ Defendants are mistaken. We conclude that plaintiff alleged facts sufficient to constitute a taking which terminated plaintiff's sublease with the Barthas pursuant to section 1265.110[10] and the condemnation provision in the sublease when the Agency acquired title to the premises.

---

[10]Section 1265.110 provides that "[w]here all the property subject to a lease is acquired for public use, the lease terminates." Section 1265.110 is part of the Eminent Domain Law (§ 1230.010 et seq.), which applies only to eminent domain proceedings. (Cal. Law Revision Com. com., 19 West's Ann. Code Civ. Proc. (1982 ed.) foll. § 1230.020, p. 395; accord, *Barthelemy v. Orange County Flood Control Dist.* (1998) 65 Cal.App.4th 558, 567-568 [76 Cal.Rptr.2d 575]; *Patrick Media Group, Inc. v. California Coastal Com.* (1992) 9 Cal.App.4th 592, 607 [11 Cal.Rptr.2d 824].)

It is a firmly established principle " 'that condemnation and inverse condemnation are merely different forms of the same limitation of governmental power. [Citations.]' [Citation.] Principles applicable to eminent domain proceedings apply, where appropriate, to suits in inverse condemnation. [Citations.]" (*Chhour v. Community Redevelopment Agency* (1996) 46 Cal.App.4th 273, 279-280 [53 Cal.Rptr.2d 585].)

Through judicial decision, the application of section 1263.510, which authorizes the recovery of loss of business goodwill in eminent domain proceedings, has been extended to inverse condemnation cases. As noted in *Chhour v. Community Redevelopment Agency, supra,* 46 Cal.App.4th 273, "as a matter of judicial development of the law . . . goodwill is compensable in an inverse condemnation action to the same extent and with the same

In this case, plaintiff alleged that "on or about August 14, 1993, defendants . . . acquired the premises from the master lessor/owner of the premises, R&M Veady . . . under its powers of eminent domain, or threat of the exercise of the power of eminent domain, for public purposes, to wit: redevelopment, elimination of blight, and health and safety pursuant to law." Documents attached to the operative complaint and incorporated therein by reference provided factual support for plaintiff's allegations.

In a January 20, 1994 letter, the Agency's attorney informed plaintiffs that "[i]n order to make an appropriate offer to you with respect to the relocation of that business it is necessary to complete an analysis of the goodwill of the business and any damage to that goodwill resulting from the proposed relocation." Thereafter, on March 25, 1994, the Agency notified plaintiff that he had 90 days, or until June 23, 1994, to vacate the premises. Before the 90-day period of time expired, the Agency transferred title of the premises to Dr. Moskowitz pursuant to a disposition and development agreement. Correspondence written by Dr. Moskowitz's counsel and the Agency's relocation agent made it clear that plaintiff still had to vacate the premises by June 23, 1994, unless a new lease agreement was reached between Dr. Moskowitz and Frank Bartha. Such an agreement was executed on June 21, 1994.

The precise terms of the Bartha/Moskowitz lease agreement, entered into in June 1994, are unknown except that the lease was for a one-year period and was subject to termination on six months' notice. Plaintiff was not a party to this lease agreement. Plaintiff continued to occupy the premises as the Barthas' sublessee. On April 6, 1999, Dr. Moskowitz wrote to Mr. Bartha and plaintiff, notifying them that he was terminating their lease entered into in June 1994 "as of six months from the date of this notice." The Bartha/Moskowitz lease therefore was set to expire on October 6, 1999, along with plaintiff's apparent postacquisition sublease agreement with the Barthas. In December 1999, Dr. Moskowitz forcibly evicted plaintiff from the premises.

From these allegations, it reasonably can be inferred that the lease between Mr. Bartha and Dr. Moskowitz was renewed each year and that the six-month termination notification provision remained in effect. Dr. Moskowitz thereafter evicted plaintiff in December 1999 because he needed the premises for the public project he had undertaken pursuant to the disposition and development agreement with the Agency. Therein lies the causal connection between the Agency's initial acquisition of the premises and plaintiff's displacement from the premises.

---

limitations on recovery found in Code of Civil Procedure section 1263.510." (*Id.* at p. 282, fn. omitted.) We perceive no valid reason for not extending the application of section 1265.110 to inverse condemnation proceedings. We therefore do so.

These allegations, along with the documents incorporated by reference into the operative complaint, sufficiently establish a taking and concomitantly preclude the conclusion that the Agency acquired the Veady property in an open market transaction (see *Langer v. Redevelopment Agency* (1999) 71 Cal.App.4th 998, 1003-1010 [84 Cal.Rptr.2d 19]; *Pacific Outdoor Advertising Co. v. City of Burbank* (1978) 86 Cal.App.3d 5, 12 [149 Cal.Rptr. 906]; accord, *Concrete Service Co. v. State of California ex rel. Dept. Pub. Wks.* (1969) 274 Cal.App.2d 142, 147 [78 Cal.Rptr. 923]) or that plaintiff's sublease remained in effect until its expiration date of December 31, 1998 (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 534, 535, fn. 19 [86 Cal.Rptr.2d 473]; *People ex rel. Dept. of Public Works v. Hartley* (1963) 214 Cal.App.2d 378, 379-380, 381 [29 Cal.Rptr. 502]).

Had this been a simple purchase by the Agency, the Barthas' master lease with the landowner and plaintiff's sublease would have continued uninterrupted. (See generally *Kirk Corp. v. First American Title Co.* (1990) 220 Cal.App.3d 785, 809 [270 Cal.Rptr. 24]; *Rosenkranz v. Pellin* (1950) 99 Cal.App.2d 650, 652-653 [222 P.2d 249]; Friedman et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2001) ¶ 2:515, p. 2B-156.) Plaintiff was able to continue operating his donut shop after Dr. Moskowitz acquired the property from the Agency only because Frank Bartha entered into a new lease agreement with Dr. Moskowitz, however. Thus, the original master lease between the Barthas and Veady was terminated as a result of the Agency's taking of the property (see § 1265.110[11]) and replaced with the lease between Frank Bartha and Dr. Moskowitz. As for the original sublease agreement between plaintiff and the Barthas, that agreement terminated in accordance with paragraph 13, pertaining to condemnation, and section 1265.110. Thus, the allegations of the complaint are sufficient to establish a taking of plaintiff's original subleasehold interest and to negate defendants' assertion that it did not expire until December 31, 1998. That plaintiff ultimately was not required to vacate the premises until after what would have been the last day of his original sublease does not compel a contrary conclusion. Had Dr. Moskowitz needed the premises earlier he could have terminated his lease with Frank Bartha well before that date.

---

[11]Section 1265.110 "codifies the rule that the taking of the entire demised premises for public use by eminent domain or agreement operates to release the tenant from liability for subsequently accruing rent. [Citations.] This section does not affect the right of a lessee, if any, to compensation for the impairment of his leasehold interest. See Section 1265.150. Nor does this section apply where there is a valid provision to the contrary in the lease. See Section 1265.160." (Cal. Law Revision Com. com., 19A West's Ann. Code Civ. Proc. (1982 ed.) foll. § 1265.110, p. 97; accord, *City of Vista v. Fielder* (1996) 13 Cal.4th 612, 616 [54 Cal.Rptr.2d 861, 919 P.2d 151].)

As a subtenant on the premises, plaintiff's postacquisition ability to operate his donut shop on those premises was dependent wholly on the existence of the lease between Frank Bartha and Dr. Moskowitz. Whatever contractual entitlement plaintiff originally had with the Barthas to remain on the premises to December 31, 1998, no longer existed, since the Barthas themselves did not have a contractual leasehold interest in the property to that date specific. Under the new one-year contractual arrangement, Frank Bartha was permitted to pay rent (as the tenant) and plaintiff was permitted to conduct his business (as the subtenant) subject to termination on six months' notice. We now turn to the question of whether plaintiff alleged facts sufficient to establish that he was damaged as a result of the taking.

"[G]enerally, a lessee is entitled to 'compensation for the value of his leasehold interest [taken], if any, and any of his property taken' therewith . . . ." (*City of Vista v. Fielder, supra,* 13 Cal.4th at p. 616.) In his opening brief, plaintiff asserts that he had a reasonable expectation of continued tenancy on the premises and lease renewals in the absence of the taking. He did not so allege in his operative complaint, however.

At oral argument, plaintiff expounded that had it not been for the taking, plaintiff, as well as other displaced commercial tenants of the Veady property, would have been allowed to continue their occupancies. Plaintiff explained that Bartha's Donuts was located in a commercial shopping center. It was a very popular donut shop that provided a continuous flow of income to both plaintiff and the property owner. Thus, at the end of the extended lease term, December 31, 1998, it was reasonable to expect that the sublease would have been renewed on a month-to-month or long-term basis. This assertion is quite plausible, in that the original sublease agreement contained a holding over provision that would have permitted plaintiff to remain on the premises on a month-to-month basis with the Barthas' consent after the extended lease term expired on December 31, 1998. (See generally *Lanning v. City of Monterey* (1986) 181 Cal.App.3d 352, 359 [226 Cal.Rptr. 258]; but see *San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc., supra,* 73 Cal.App.4th at p. 531.)

Because there is a reasonable possibility that the defect in the operative complaint can be cured by amendment, plaintiff must be permitted to substantiate his position by amending his pleading to supply the factual allegations necessary to support his claim that he would have been permitted to continue his occupancy past December 31, 1998, had there been no taking. A showing that the complaint can be amended to state a cause of action "need not be made in the trial court so long as it is made to the

reviewing court." If there is a reasonable possibility that a plaintiff can amend his complaint to cure the defects, leave to amend must be granted. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386 [272 Cal.Rptr. 387].)[12]

Plaintiff also claims an entitlement to damages for loss of business goodwill under section 1263.510,[13] which applies in inverse condemnation cases. (*Chhour v. Community Redevelopment Agency, supra*, 46 Cal.App.4th at p. 282.) Recovery for loss of goodwill under section 1263.510 requires that plaintiff prove, among other things, that his "loss cannot reasonably be prevented by a relocation of the business or by taking steps and adopting procedures that a reasonably prudent person would take and adopt in preserving the goodwill."

Plaintiff's operative complaint is devoid of specific factual allegations establishing that his purported loss of goodwill could not reasonably have been prevented by relocating his donut shop at the time of the taking or when ultimately displaced more than six years later. He also did not allege that he took steps a reasonably prudent person would adopt to preserve his goodwill and suffered a loss thereof in spite of such efforts. Plaintiff consequently has failed to set forth facts justifying a recovery for loss of goodwill within the meaning of section 1263.510.

The record discloses, however, that the trial court never reached the sufficiency of these particular allegations. It concluded that plaintiff "ha[d] not stated a claim for an actionable taking," in that "[p]laintiff's maximum

---

[12]Section 472c, subdivision (a), provides: "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made."

[13]Section 1263.510 provides:

"(a) The owner of a business conducted on the property taken, or on the remainder if such property is part of a larger parcel, shall be compensated for loss of goodwill if the owner proves all of the following:

"(1) The loss is caused by the taking of the property or the injury to the remainder.

"(2) The loss cannot reasonably be prevented by a relocation of the business or by taking steps and adopting procedures that a reasonably prudent person would take and adopt in preserving the goodwill.

"(3) Compensation for the loss will not be included in payments under Section 7262 of the Government Code.

"(4) Compensation for the loss will not be duplicated in the compensation otherwise awarded to the owner.

"(b) Within the meaning of this article, 'goodwill' consists of the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage."

expectancy under the original term sublease was December 31, 1998," and he "remained on the property until December 21, 1999." Therefore, he "received the full benefit of his bargain under the original term sublease as it existed at the time the property was acquired." For this reason, plaintiff never made a showing below as to how he could amend his complaint to establish a statutory entitlement to damages for loss of goodwill. At oral argument, however, plaintiff's counsel represented to this court that he could amend plaintiff's inverse condemnation cause of action to supply the missing allegations. This is yet another reason plaintiff must be afforded an opportunity to amend his complaint.

Plaintiff further represented that, upon his eviction from the premises, he relocated his business to a property in a location that charged higher rent. Citing *People ex rel. Dept. of Transportation v. Muller* (1984) 36 Cal.3d 263, 270 [203 Cal.Rptr. 772, 681 P.2d 1340], plaintiff argued that the rent differential was compensable as loss of goodwill.

In *Muller*, a veterinarian was required to relocate his practice to a new location that would allow him to retain his old patronage. His rental cost at the new location was substantially higher than what he had paid at his old location. The California Supreme Court stated that section 1263.510 "authorize[s] compensation for a loss of 'benefits' of 'location'" and therefore authorizes a court to award compensation for the loss of an old location that "carried the manifest benefit of a cheap rent in an older building." (*People ex rel. Dept. of Transportation v. Muller, supra*, 36 Cal.3d at p. 269.) *Muller* further supports plaintiff's claim of entitlement to damages for loss of goodwill and our determination that leave to amend is in order. (*Careau & Co. v. Security Pacific Business Credit, Inc., supra*, 222 Cal.App.3d at p. 1386.)

Plaintiff also sought compensation for his "improvements pertaining to the realty" (see § 1263.210; *Lanning v. City of Monterey, supra*, 181 Cal.App.3d at p. 359) and "loss of value of inventory of the business" (see generally *Baldwin Park Redevelopment Agency v. Irving* (1984) 156 Cal.App.3d 428 [202 Cal.Rptr. 792]). Paragraph 13 of the original sublease, pertaining to condemnation, further provided: "All awards for the taking of any part of the Premises or any payment made under the threat of the exercise of the power of eminent domain shall be the property of the Landlord, whether made as compensation for the diminution of the value of the leasehold or for the taking of the fee or as severance damages, provided, however, that Tenant shall be entitled to an award for loss of or damage to Tenant's trade fixtures and removable personal property."

Paragraph 36 of the lease entitled "ADDENDUM" provides that "[a]ny addendum attached hereto and either signed or initialed by the parties shall be deemed a part hereof and shall supersede any conflicting terms or provisions contained in this Lease." After this contractual text is the language: "SEE ATTACHED PARAGRAPHS 37, 38, 39 and 40." The signatures of the Barthas and the Nietos to the sublease agreement then follow. On the next page of the document, paragraph 40 states that "[a]ny award for the taking of all or part of the premises under the power of eminent domain or any payment made under threat of the exercise of such power shall be paid to Lessor, except that Tenant shall receive from any such award the following: a sum paid to Tenant from condemnor for loss of goodwill."

In *City of Vista v. Fielder, supra,* 13 Cal.4th 612, the court was faced with the question of whether "a provision of a lease that declares that the lease terminates if all the property subject thereto is acquired for public use deprive[s] the lessee of any right he may have to compensation for the taking of his leasehold or other property[.]" (At p. 614.) The court held that termination of a lease "does not affect any right of the lessee to compensation related thereto." These rules, however, "may indeed be displaced by a provision of a lease to the contrary." (*Id.* at p. 618.)

Plaintiff argues that paragraph 40 "is not a limitation" but rather "clarifies the right to compensation." Moreover, the parties intended "to insure that goodwill was compensable and not to limit any other rights to recover compensation." Defendants, on the other hand, argue that paragraph 40 limits the condemnation damages plaintiff may recover to loss of goodwill. In this case, the language in paragraph 40 conflicts with the applicable portion of paragraph 13. Thus, to the extent that paragraph 40 displaces the language in paragraph 13, it limits plaintiff's recovery for condemnation to loss of goodwill. (*City of Vista v. Fielder, supra,* 13 Cal.4th at p. 618.)

We note, however, that the copy of the addendum attached to the operative complaint was photocopied in an off-centered manner. Although both parties proceed as if the addendum had been signed or initialed by the Barthas and Nietos, and therefore took effect, we cannot definitively confirm that it was. Plaintiff is free to clarify this matter further when he amends his complaint.

In summary, the trial court properly sustained defendant's demurrer to plaintiff's cause of action for inverse condemnation, in that plaintiff failed to allege facts sufficient to establish damages resulting from the taking. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 68

Cal.App.4th at p. 459; *Coutin v. Lucas, supra,* 220 Cal.App.3d at p. 1020.) Plaintiff has demonstrated that there is a reasonable possibility that he can cure the defects by amendment, however. Consequently, he must be afforded leave to amend his complaint. (*Careau & Co. v. Security Pacific Business Credit, Inc., supra,* 222 Cal.App.3d at p. 1386.)

*Precondemnation Damages*

Although designated as the second cause of action, plaintiff's claim for precondemnation damages is not really a distinct cause of action. Rather, it is simply a form of damages that may be recovered in an action for inverse condemnation. In actuality, therefore, there is only one cause of action set forth in plaintiff's operative complaint—i.e., inverse condemnation.

In *Klopping v. City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345], the court recognized an inverse condemnation claim for precondemnation damages. The court observed, "when the condemner acts unreasonably in issuing precondemnation statements, either by excessively delaying eminent domain action or by other oppressive conduct, our constitutional concern over property rights requires that the owner be compensated. This requirement applies even though the activities which give rise to such damages may be significantly less than those which would constitute a de facto taking of the property . . . ." (*Id.* at pp. 51-52.) The court accordingly held "that a condemnee must be provided with an opportunity to demonstrate that (1) the public authority acted improperly either by unreasonably delaying eminent domain action following an announcement of intent to condemn or by other unreasonable conduct prior to condemnation; and (2) as a result of such action the property in question suffered a diminution in market value." (*Id.* at p. 52, fn. omitted.)

Cases decided after *Klopping* underscore that precondemnation damages may be recovered only upon a showing of "some 'direct' and 'special' interference with the landowner's use of the property." (*Barthelemy v. Orange County Flood Control Dist., supra,* 65 Cal.App.4th at p. 564; see *Selby Realty Co. v. City of San Buenaventura* (1973) 10 Cal.3d 110, 119-120 [109 Cal.Rptr. 799, 514 P.2d 111]; *People ex rel. Dept. Pub. Wks. v. Peninsula Enterprises, Inc.* (1979) 91 Cal.App.3d 332, 355 [153 Cal.Rptr. 895].) The mere act of designating a particular parcel of property for public acquisition does not give rise to an action for inverse condemnation, even though such designation might affect the parcel's marketability. (*Barthelemy, supra,* at p. 565.) Official action evidencing an intent to condemn will give rise to an inverse condemnation claim where the public authority "unduly

delayed acquisition proceedings or engaged in other unreasonable conduct which significantly invaded or appropriated the use or enjoyment of private property." (*Contra Costa Water Dist. v. Vaquero Farms, Inc.* (1997) 58 Cal.App.4th 883, 899 [68 Cal.Rptr.2d 272].) Thus, claims for precondemnation damages have been recognized where "the condemning authorities have acted affirmatively to lower the value of the subject property, physically burdened the property, and/or decreased the income the property produced." (*Id.* at p. 901.)

In his operative complaint, plaintiff alleged that before acquiring the premises, the Agency announced its intent to acquire the premises for the public purpose of redevelopment. In addition, plaintiff alleged in substance that the Agency acquired the premises under threat of condemnation. Thus, its acquisition of the premises, its transfer of the premises to Dr. Moskowitz and the termination of plaintiff's lease constituted a taking.

Plaintiff further alleged "the AGENCY withheld filing an eminent domain action to acquire and to compensate plaintiff for an unreasonable and substantial period of time during which the AGENCY negotiated to buy Veady's interest in the premises under the threat of condemnation. The AGENCY conducted hearings preparatory to passing a resolution to condemn, and caused announcements to be circulated to the general public. [¶] As a result of such conduct, public announcements and statements resulting in direct and special interference with plaintiff's leasehold, compounded by the ultimate acquisition of the premise, sale, or otherwise to Moskowitz, physical termination of plaintiff's leasehold interest, and the continuing failure and refusal to justly compensate plaintiff as described above, the AGENCY has actually and proximately caused damage and injury to plaintiff, such as loss of customers and income to plaintiff's business . . . ."

Plaintiff's allegation that the Agency's precondemnation conduct "result[ed] in direct and special interference with [his] leasehold" is a conclusion that we may not consider. (*Moore v. Conliffe, supra,* 7 Cal.4th at p. 638; *Montclair Parkowners Assn. v. City of Montclair, supra,* 76 Cal.App.4th at p. 790.) Moreover, it presupposes that the Agency's precondemnation conduct was unreasonable in some manner. Although plaintiff acknowledges that recovery of precondemnation damages requires a showing of either unreasonable delay or other unreasonable conduct (*Klopping v. City of Whittier, supra,* 8 Cal.3d at p. 52; *People ex rel. Dept. of Pub. Wks. v. Peninsula Enterprises, Inc., supra,* 91 Cal.App.3d at p. 357), he does not direct this court to specific factual allegations establishing that the Agency's precondemnation conduct was unreasonable. His mere allegation that the Agency acted unreasonably, also a conclusion, is not enough.

Although the allegations of the first amended complaint are insufficient as a matter of law to establish plaintiff's entitlement to precondemnation damages, a demurrer cannot rightfully be sustained to part of a cause of action or to a particular type of damage or remedy. (*Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547, 1562 [55 Cal.Rptr.2d 465]; *PH II, Inc. v. Superior Court* (1995) 33 Cal.App.4th 1680, 1681 [40 Cal.Rptr.2d 169]; *Grieves v. Superior Court* (1984) 157 Cal.App.3d 159, 163-164 [203 Cal.Rptr. 556].) Therefore, the trial court improperly sustained defendant's demurrer to plaintiff's purported second cause of action. On remand, plaintiff is free to attempt anew to state sufficient facts entitling him to precondemnation damages.

*Statute of Limitations*

■ Defendants contend that, if plaintiff's sublease terminated in August 1993 when they acquired title to the premises, plaintiff's inverse condemnation claims are barred by the five-year statute of limitations. In plaintiff's view, the statute of limitations did not commence running until he was required to vacate the premises. We agree with plaintiff.

As noted in *Otay Water Dist. v. Beckwith* (1991) 1 Cal.App.4th 1041 [3 Cal.Rptr.2d 223], "[c]laims based on the government's taking of private property are subject to a five-year statue of limitations. (See . . . §§ 318, 319 . . . .) Generally, the limitations period on such inverse condemnation claims begins to run when the governmental entity *takes possession* of the property. [Citations.]" (*Id.* at pp. 1048-1049, italics added, citations omitted.)

In this case, the taking occurred in August 1993. Thereafter, defendants transferred title to the property to Dr. Moskowitz pursuant to a disposition and development agreement. It was not until 1999, when Dr. Moskowitz needed the premises for his public project, that he took the necessary steps to acquire *possession* of the premises. It was at this time, and only at this time, that plaintiff suffered any appreciable damage as a result of the Agency's original taking of the property. Having filed his inverse condemnation in March 2000, well within five years of the date he gave up possession of the premises, plaintiff's action is timely. (*Otay Water Dist. v. Beckwith, supra,* 1 Cal.App.4th at pp. 1048-1049.)

DISPOSITION

The order of dismissal is reversed. The trial court is directed to vacate its order sustaining defendants' demurrer to plaintiff's first amended complaint

without leave to amend and to enter a new order sustaining the demurrer with leave to amend. Plaintiff Veisna Kong is awarded costs on appeal.

Ortega, J., and Mallano, J., concurred.