Filed 11/24/15  Smith v. Smith CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| HERMAN SMITH, | B259479 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. TC 027784) |
| v. | |
| ERMAN SMITH, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court for the County of Los Angeles. William Barry, Judge.  Reversed and remanded.

Michael E. Gaston for Plaintiff and Appellant.

Robert N. Treiman for Defendant and Respondent.

.

_____

**SUMMARY**

Plaintiff Herman Smith sued his son, defendant Erman Smith, alleging elder abuse, fraud and related causes of action. The substance of plaintiff's claim was that his son had deceived him into granting the son a one-half interest in plaintiff's home, and plaintiff did not discover this until December 2013, when he tried to refinance the property. Plaintiff's complaint alleged the deception occurred in 2008.

Defendant demurred to the complaint, requesting judicial notice of three deeds, the first of which was a quitclaim deed recorded in July 2007, by which plaintiff transferred the property to himself and defendant as joint tenants. Before the scheduled hearing, plaintiff filed a first amended complaint. He alleged he did not offer to quitclaim a one-half interest in the property to his son at any time from June or July 2007 to the present, and did not at any time intend to quitclaim his property to his son. But the complaint again contained references to events "in 2008."

Defendant again demurred, and the trial court sustained the demurrer without leave to amend. The court's order stated that it "has heard no facts or potential facts from Plaintiff to show that the deed recorded on July 12, 2007 was anything other than a bona fide transfer to Plaintiff and Defendant as joint tenants," and "[t]he alleged incidents thereafter which are pled in the First Amended Complaint are immaterial."

We conclude that the trial court should have granted leave to amend the complaint, and therefore reverse the judgment of dismissal.

**FACTS**

On March 5, 2014, plaintiff filed his original complaint, alleging causes of action for financial elder abuse, quiet title, declaratory relief, injunctive relief, and fraud. He alleged the following facts.

Plaintiff, 90 years old, resides at the property that is the subject of the complaint (the Leapwood property). He purchased the property in 1995, and became its sole owner in 2004. In 2008, plaintiff agreed to name defendant (his son Erman) as a beneficiary of plaintiff's life insurance policy. Plaintiff did not agree or ever intend to quitclaim his property to his son.

2

Plaintiff accompanied defendant to the bank at defendant's request. While there, plaintiff told defendant he was not feeling well, but defendant assured plaintiff all he had to do was sign and return to the car to wait for defendant. Because he trusted defendant, plaintiff signed a document defendant presented to him, assuming the document was his life insurance policy, adding defendant as a beneficiary. "On the contrary, what defendant in fact did was to sign his name on to the title of plaintiff's property. At no time did plaintiff intend or desire to quitclaim his property to defendant." Plaintiff discovered this in December 2013, when he went to the bank to refinance the property. Since then, plaintiff repeatedly asked defendant to quitclaim the property back to plaintiff, but defendant refused.

Based on these facts, plaintiff alleged financial elder abuse; sought to quiet title "as of the date in 2008 when defendant, without plaintiff's permission, acquired an interest in the property"; and alleged a cause of action for fraud, asserting defendant's actions were done with the intent to defraud plaintiff of his property. Plaintiff further sought declaratory relief, injunctive relief, a temporary restraining order and punitive damages.

On April 2, 2014, defendant filed a demurrer to the complaint, contending plaintiff did not plead facts to support his claims and the claims were uncertain. Defendant requested judicial notice of three deeds. The first of these was a quitclaim deed dated June 28, 2007 and recorded July 12, 2007, by which plaintiff transferred the property to himself and defendant as joint tenants.

The second deed was a trust transfer deed dated February 1, 2008, recorded on February 15, 2008. By this deed, plaintiff transferred his "undivided one-half interest" in the property to himself "as Trustee of The Herman Smith 2007 Trust dated _____."

The third deed was a grant deed dated January 4, 2010, and recorded January 13, 2010. By this grant deed, defendant and plaintiff (the latter "as Trustee of The Herman Smith 2008 Trust dated February 1, 2008," who "acquired title as Herman Smith, as Trustee of the Herman Smith 2007 Trust dated _____") granted the property to

3

defendant and plaintiff (the latter "as Trustee of the Herman Smith 2008 Trust dated February 1, 2008").

In his demurrer, defendant contended it was unclear which deed was at issue, but the recorded documents did not show any quitclaim transfer in 2008, and plaintiff "does not deny signing the 2007 deed" and "allege[d] no facts to show Defendant did anything wrong in connection with [the 2007] transaction." Defendant also contended plaintiff's claims were barred by the statute of limitations, and the fraud claim lacked specificity.

The day before the scheduled hearing on defendant's demurrer, plaintiff filed his first amended complaint. The amended complaint was much the same as the original, but there were some changes.

Plaintiff alleged that "[a]t no time during this meeting in 2008" did defendant explain the contents or disclose the nature of the document plaintiff was signing, and never provided a copy. And, "[a]t no time during the period of June or July 2007, 2008, 2009, 2010, up to the present date and thereafter did plaintiff offer to quitclaim one half interest in his property to his son defendant." (Plaintiff omitted the allegation that "what defendant in fact did was to sign his name on to the title of plaintiff's property.")

Plaintiff also added that he did not discover defendant's wrongful and fraudulent acquisition of the one half interest in his property "because he had no reason at all to suspect defendant of wrongdoing," and "implicitly trusted and relied" on defendant's representations "that all defendant was doing was aiding plaintiff with preparing the necessary documents in order to be placed on plaintiff['s] life insurance policy as a beneficiary." Plaintiff had "no reason . . . to suspect foul play by his own son" and therefore "no reason to investigate or make an effort to discover any potential wrongdoings." Since he discovered the wrongdoing in December 2013, he acted expeditiously by asking defendant to remove his name from the deed voluntarily, and suing in March 2014 after defendant refused.

In his quiet title cause of action, plaintiff changed the date from 2008 to 2007, alleging he sought to quiet title "as of the date in 2007 when defendant, without plaintiff's permission, acquired an interest in the property."

4

In his cause of action for fraud, plaintiff specified that defendant's misrepresentation was stating that his sole purpose in having plaintiff sign the document at the bank was to add defendant as a beneficiary to plaintiff's life insurance policy, and failing to disclose the document "was in fact a grant deed quit claiming one half interest of the property to defendant . . . ."

Defendant again demurred and requested judicial notice of the three recorded deeds, as well as of the original complaint. In addition to contending the facts did not state any cause of action, defendant contended the first amended complaint was "a sham," and that plaintiff "deleted material allegations" that the recorded documents showed to be wrong, and "included conclusory allegations to try to shift the theory of the case." Defendant pointed out that the amended complaint refers to the "incident at the bank in 2008," and contended it did not allege "any facts with respect to Defendant's acquiring his joint tenant interest in 2007." Plaintiff "has not alleged facts showing that Defendant obtained any property through the incident at the bank," and the "recorded documents show Defendant did not acquire his joint tenant interest then."

Plaintiff's opposition (in addition to presenting many irrelevant facts not alleged in the complaint) argued that plaintiff "filed his original complaint based on his best recollection," and "any factual differences [in the amended complaint] are due to plaintiff's memory being refreshed upon his subsequent receipt of the documents in question."

The trial court took judicial notice of the documents defendant presented, and sustained the demurrer without leave to amend. The record contains no transcript of the July 1, 2014 hearing on the demurrer. The court's order states that it "has heard no facts or potential facts from Plaintiff to show that the deed recorded on July 12, 2007 was anything other than a bona fide transfer to Plaintiff and Defendant as joint tenants," and "[t]he alleged incidents thereafter which are pled in the First Amended Complaint are immaterial. The documents demonstrate that Defendant has had a joint tenant interest since July 2007 and Plaintiff is unable to allege any facts which could call that into question."

5

Judgment of dismissal was entered on July 23, 2014, and plaintiff filed a timely appeal.

## DISCUSSION

We conclude the trial court abused its discretion in refusing to grant plaintiff leave to amend his complaint.

The legal principles governing demurrers are settled. A demurrer tests the legal sufficiency of the complaint. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action. For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action. (*Ibid.*) "A showing that the complaint can be amended to state a cause of action 'need not be made in the trial court so long as it is made to the reviewing court.' " (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1041-1042.)

Plaintiff, represented by a different lawyer on appeal, contends the pleadings below were sufficient, but if not the trial court should have allowed him to amend the complaint. He argues he did not have possession of any of the recorded deeds until defendant filed his demurrer and requested judicial notice of the documents. Plaintiff tells us that if given an opportunity to file a second amended complaint, he would allege the following facts – in substance, that the incident at the bank occurred in 2007, not 2008, and that his son took advantage of his "functional illiteracy" and "near blindness." Specifically:

6

Plaintiff accompanied his son to a Los Angeles bank, at defendant's request, on or around June 28, 2007. There, defendant presented for plaintiff's signature a quitclaim deed, lying to his father and telling him it was an insurance document. Defendant was aware his father was 90 years old, "and suffered from functional illiteracy, and illnesses which included near blindness, infirmity, and weakness of body." Defendant "knew Plaintiff never intended to transfer any property to him, or anyone else." Defendant "took advantage of Plaintiffs' father and son relationship, a relationship of trust, to deceive plaintiff into believing he was signing an insurance policy beneficiary agreement, rather than what he actually signed, a quitclaim deed . . . . On July 11, 2007 Defendant caused the document to be notarized and on July 12, 2007 caused the deed to be recorded. Plaintiff had no knowledge of what was notarized, or recorded. Defendant again claimed it was a life insurance beneficiary agreement. Plaintiff was not capable of reading the document, and Defendant refused to provide a copy to Plaintiff."

Plaintiff discovered the fraud for the first time in December 2013, when he was trying to refinance the property. Plaintiff then made "repeated requests for copies of the document he signed in 2007 at the bank and any other documents relating to the Leapwood property held by defendant," but was repeatedly refused. Before then, plaintiff did not know and had no reason to know he had signed a quitclaim deed in 2007. Defendant "took advantage of the Plaintiff's advanced age and its attendant infirmities, and defects, to fraudulently deprive Plaintiff of his property," causing "financial loss to Plaintiff, reducing his holding in the Leapwood property by 50%, preventing [him] from refinancing the property, and the enjoyment of quiet, unencumbered title."[1]

---

[1] Plaintiff's brief also relates numerous facts taken from his opposition to the demurrer, among them a claim that defendant had plaintiff's mail diverted to defendant's home, including retirement information and papers, and that this enabled defendant to withdraw $10,000 from plaintiff's retirement account without permission. None of these points are alleged in the complaint or in the proposed amended complaint and so we do not consider them.

7

First, these facts, if true, state causes of action for financial elder abuse and fraud, and likewise support a claim to quiet title to the Leapwood property. Financial abuse of an elder "occurs when a person . . . . [¶] [t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud," or by undue influence, and "a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest . . . ." (Welf. & Inst. Code, § 15610.30, subds. (a)&(c).) Fraud consists of " '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' [Citation.]" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) The proposed second amended complaint alleges all these elements.

Second, we recognize the principle that a court is " 'not bound to accept as true allegations contrary to factual allegations in former pleading in the same case.'" (*Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 946; see *ibid.* [" 'The court may examine the prior complaint to ascertain whether the amended complaint is merely a sham," and "any inconsistencies with prior pleadings must be explained; if the pleader fails to do so, the court may disregard the inconsistent allegations.' "].)

Here, the inconsistency lies in the now-clear allegations of the proposed second amended complaint – that the deceptive conduct occurred in 2007 – while the first amended complaint retained references suggesting the pertinent events occurred in 2008. Under the circumstances here, we do not think this inconsistency renders the proposed amended complaint a "sham" pleading. The references to 2008 could have been a scrivener's error in the first amended complaint – which, in contradiction of the references to 2008, also alleged that plaintiff did not, at any time from June 2007 to the present, "offer to quitclaim one half interest in his property" to his son, and that defendant, "in 2007 . . . , without plaintiff's permission, acquired an interest in the

8

property." And, as plaintiff explained in opposition to the demurrer (when defendant claimed the first amended complaint was a sham), he "filed his original complaint based on his best recollection," and "any factual differences [in the amended complaint] are due to plaintiff's memory being refreshed upon his subsequent receipt of the documents in question." In short, the circumstances here do not support a conclusion that the proposed amendment is a sham pleading. (Cf. *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 43, fn. 7, quoting Code Civ. Proc., § 452 [" 'In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties.' "].)

Third, defendant contends the statute of limitations provided an alternative ground for sustaining his demurrer. He cites *E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1319 [" 'A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer.' "].) Defendant complains plaintiff did not plead "the specific date" of the alleged discovery, or "the manner in which the discovery was made," or sufficient facts showing inability to have made earlier discovery. We reject this contention.

Plaintiff sufficiently alleged that he discovered the alleged deception in December 2013, while trying to refinance the property. We are aware of no requirement to specify "the specific date" in December 2013, and the "manner of discovery" is plainly alleged. Further, plaintiff alleged he did not discover defendant's fraudulent acquisition of his interest in the Leapwood property "because he had no reason at all to suspect defendant of wrongdoing," he "implicitly trusted" his son, and therefore had "no reason to investigate or make an effort to discover any potential wrongdoings." These allegations are sufficiently specific to explain plaintiff's failure to make earlier discovery, particularly in light of his age and infirmities as alleged in the proposed amended complaint. Defendant points out a number of ways in which plaintiff might have

9

discovered defendant's ownership interest – such as through the 2008 and 2010 deeds which the county recorder would have mailed to plaintiff's address, or property tax statements that "presumably would also have shown [defendant's] ownership interest." But these are issues of fact to be decided by a trier of fact, not matters that may be resolved on demurrer.

## DISPOSITION

The judgment is reversed, and the cause is remanded to the trial court with directions to vacate its order sustaining plaintiff's demurrer without leave to amend and to issue a new order granting leave to amend the complaint.  Plaintiff shall recover his costs on appeal.

GRIMES, J.

We concur:

BIGELOW, P. J.


RUBIN, J.


10