[No. S046856. July 25, 1996.]

CITY OF VISTA, Plaintiff and Respondent, v.
W.O. FIELDER et al., Defendants and Appellants.

COUNSEL

W. O. Fielder and Lee R. Bittner, in pro. per., Michael W. Loker, Hill, Farrer & Burrill, Dean E. Dennis and Kevin H. Brogan for Defendants and Appellants.

Parrille & Downes, Ronald W. Beals and Anthony P. Parrille as Amici Curiae on behalf of Defendants and Appellants.

Higgs, Fletcher & Mack, John M. Morris and Thomas P. Sayer, Jr., for Plaintiff and Respondent.

OPINION

MOSK, J.—We granted review in this cause to address a question of first impression in California: Under the Eminent Domain Law, which was enacted by section 2 of chapter 1275 of the Statutes of 1975, and codified as

title 7 of part 3 of the Code of Civil Procedure, commencing with section 1230.010, does a provision of a lease that declares that the lease terminates if all the property subject thereto is acquired for public use deprive the lessee of any right he may have to compensation for the taking of his leasehold or other property?

For the reasons stated below, we conclude that the answer is: No.

## I

On March 31, 1989, the City of Vista (hereafter the city) as plaintiff filed a complaint in condemnation in the Superior Court of San Diego County against defendants including Robin T. Johnson and Cynthia A. Johnson (collectively the Johnsons) and Todo, Inc., doing business as (apparently) Bittners Restaurant Equipment, and W.O. Fielder and Lee R. Bittner, who were (apparently) Todo's directors, officers, and shareholders (hereafter collectively Bittners). Its object was to acquire for public use, specifically, street broadening and realignment, a certain parcel of real property located at 139 North Santa Fe Avenue within its borders, on which stood a building locally known as the "Old Red Barn." The Johnsons owned the parcel in fee simple absolute. Bittners enjoyed a leasehold. On or about July 1, 1984, using a preprinted form drafted to cover residential real property, Robin Johnson, on the one side, and Fielder and Bittner, on the other, had executed a lease, which, inter alia, specified rent at $750 a month with various adjustments; effectively established the term from that same date to September 1, 1986, but allowed termination by any party on 30 days' written notice; and contained certain terms and conditions handwritten by Fielder, including one that came to be referred to as "Clause 5"—"Should building be condemned thru [sic] no fault of tenant this lease will be terminated." On or about July 1, 1986, the parties executed a "lease addendum," which, inter alia, raised the rent to $1,381 a month with various adjustments, effective that same date; extended the term from that same date through June 1, 1989; and declared that "[a]ll other terms and conditions remain the same in accordance with the original lease." On or about July 10, 1987, the parties executed another "lease addendum," which, inter alia, extended the term from June 1, 1989, to June 1, 1994, but without raising the rent; and declared that "[a]ll other terms and conditions remain the same in accordance with the original lease."

It appears that, on March 31, 1989, after the city filed its complaint in condemnation, the following events transpired in the proceeding. The superior court entered an order determining the probable compensation for the parcel to be $160,000. It also entered an order for possession, which would

become effective 90 days after service following the city's deposit of the indicated sum with its clerk. The city made the deposit forthwith. In due course, it took possession.

Subsequently, the Johnsons and Bittners and the other defendants entered into a settlement agreement to which the city was not a party. They stipulated, inter alia, that the superior court might enter an order allowing withdrawal of $159,000 of the $160,000 deposited with its clerk, with a net amount to the Johnsons of $19,562.99 (after satisfaction of tax and other liens) as compensation for their fee simple absolute interest in the parcel. They further stipulated that the clerk of the superior court should continue to hold the balance of the deposited sum, viz., $1,000, for withdrawal by Bittners on the superior court's order. Bittners retained its right to seek compensation for its leasehold interest. The Johnsons and the other defendants assigned to Bittners their rights to any recovery in excess of $159,000.

It appears that, later, the superior court entered an order allowing withdrawal of the indicated sum of $159,000 in accordance with the settlement agreement, and dismissed all the defendants other than Bittners.

Subsequently, Bittners filed a complaint against the city seeking damages for, inter alia, loss of goodwill for the business that it had conducted on the parcel. This action was consolidated with the eminent domain proceeding.

In the consolidated proceeding, the city moved for summary judgment. The superior court granted the motion. It concluded that there was no triable issue of material fact and that the city was entitled to judgment as a matter of law. Without apparent reference to the Eminent Domain Law, it made a determination to this effect: a provision of a lease that declares that the lease terminates if all the property subject thereto is acquired for public use deprives the lessee of any right he may have to compensation for the taking of his leasehold and other property, as an assignment to the lessor and/or a waiver by the lessee; on its very face, Clause 5 makes such a declaration and has such an operation; as a result, Bittners did not possess any compensable interest. It entered judgment accordingly, releasing to the city the $1,000 balance of the sum deposited for probable compensation.

In an opinion not certified for publication, Division One of the Fourth Appellate District of the Court of Appeal reversed. It concluded that there was indeed a triable issue of material fact as to Bittners' possession *vel non* of a compensable interest and, specifically, as to Clause 5's meaning and effect.

On remand, the city moved to bifurcate the trial. The superior court granted the motion. Evidently under the rule that, in eminent domain, "all

issues except the sole issue relating to compensation . . . are to be tried by the court" (*People* v. *Ricciardi* (1943) 23 Cal.2d 390, 402 [144 P.2d 799]), it entered an order as follows: At the threshold, it would itself determine, in light of extrinsic evidence, Bittners' possession *vel non* of a compensable interest and, specifically, Clause 5's meaning and effect. Then, if necessary, it would allow a jury to decide the amount, if any, of the compensation due. Following a bench trial at which extrinsic evidence was introduced—including testimony by Robin Johnson, Fielder, and Bittner about concerns they had apparently expressed among themselves before the execution of the lease that the city might take the parcel in eminent domain and/or pronounce the building unfit for occupancy for health and safety reasons—it made substantially the same determination that it had made previously on summary judgment and did so in the same manner. It entered substantially the same judgment in accordance therewith.

This time, in an opinion certified for partial publication, the Court of Appeal affirmed. In so doing, and without apparent reference to the Eminent Domain Law, it upheld the superior court's determination about Bittners' nonpossession of any compensable interest and, specifically, about Clause 5's meaning and effect. It purported to adopt what it called the "majority rule" under the general common law that a provision of a lease that declares that the lease terminates if all the property subject thereto is acquired for public use deprives the lessee of any right he may have to compensation for the taking of his leasehold and other property, as an assignment to the lessor and/or a waiver by the lessee.

On Bittners' petition setting forth the issue of the meaning and effect of Clause 5, we granted review. We now reverse.

II

■ The question presented is this: Under the Eminent Domain Law, does a provision of a lease that declares that the lease terminates if all the property subject thereto is acquired for public use deprive the lessee of any right he may have to compensation for the taking of his leasehold or other property?

■ ■ ■ At the outset, the Eminent Domain Law recognizes that, generally, a lessee is entitled to "compensation for the value of his leasehold interest [taken], if any, and any of his property taken" therewith, including "goodwill." (The Eminent Domain Law With Conforming Changes in Codified Sections and Official Comments (Dec. 1975) 13 Cal. Law Revision Com. Rep. (1976) p. 1224 [Cal. Law Revision Com. com. on Code Civ.

Proc., § 1265.150] (hereafter Eminent Domain Law); see Code Civ. Proc., § 1263.310 [stating that "[c]ompensation shall be awarded for . . . property taken"]; *id.*, § 1235.170 [defining "property" to include "real and personal property and any interest therein"]; *id.*, § 1235.125 [defining " 'interest' " to include "any right, title, or estate in property"].)[1]

█ The Eminent Domain Law itself declares the rule, in Code of Civil Procedure section 1265.110, that "[w]here all the property subject to a lease is acquired for public use, the lease terminates" pursuant to the statute. The law thereby "codifies the rule that the taking of the entire demised premises for public use . . . operates to release the tenant from liability for subsequently accruing rent." (Eminent Domain Law, *supra*, 13 Cal. Law Revision Com. Rep. at p. 1222 [Cal. Law Revision Com. com. on Code Civ. Proc., § 1265.110].)

The Eminent Domain Law also declares the rule, in Code of Civil Procedure section 1265.150, that the termination of a lease pursuant to the statute on the acquisition of all the property subject thereto does not "affect[] or impair[] any right a lessee may have to compensation for the taking of his lease," meaning his leasehold interest, "or for the taking of any other property in which he has an interest." By its terms, the law "assure[s] that . . . termination of a lease" pursuant to the statute "does not preclude a lessee's recovery of compensation for the value of his leasehold interest [taken], if any, and any of his property taken" therewith, including "goodwill." (Eminent Domain Law, *supra*, 13 Cal. Law Revision Com. Rep. at p. 1224 [Cal. Law Revision Com. com. on Code Civ. Proc., § 1265.150].)

Finally, the Eminent Domain Law states, in Code of Civil Procedure section 1265.160, that the above cited rules do not "affect[] or impair[] the rights and obligations of the parties to a lease to the extent that the lease provides for such rights and obligations" to the contrary "in the event of the acquisition of all . . . the property for public use"—as by an assignment to the lessor and/or a waiver by the lessee of any right the lessee may have to

---

[1] The lessee possesses a leasehold interest *as lessee*. For purposes of the Eminent Domain Law, such an interest may carry what is called "bonus value"—which may be defined as "the present value of the difference between economic rent, i.e., the value of market rental, and the contract rent through the remaining lease term." (*New Haven Unified School Dist.* v. *Taco Bell Corp.* (1994) 24 Cal.App.4th 1473, 1478-1479 [30 Cal.Rptr.2d 469].)

By contrast, a lessee may possess goodwill *as owner of a business*. For purposes of the Eminent Domain Law, as stated in Code of Civil Procedure section 1263.510, subdivision (b), goodwill "consists of the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage."

compensation for the taking of his leasehold or other property.[2] The law consequently implies that, if the lease does not provide to the contrary, the rules in question apply. (Eminent Domain Law, *supra*, 13 Cal. Law Revision Com. Rep. at pp. 1222, 1224 [Cal. Law Revision Com. coms. on Code Civ. Proc., §§ 1265.110, 1265.160].)

In view of the foregoing, it is evident that the answer to the question presented is no: Under the Eminent Domain Law, a provision of a lease that declares that the lease terminates if all the property subject thereto is acquired for public use does *not* deprive the lessee of any right he may have to compensation for the taking of his leasehold or other property. The Eminent Domain Law itself declares the generally applicable rules that the lease terminates if all the property subject thereto is acquired for public use, and that such termination does not affect any right of the lessee to compensation related thereto. These rules may indeed be displaced by a provision of a lease to the contrary. But a provision declaring that the lease terminates if all the property subject thereto is acquired for public use is *not* to the contrary of either of the two rules; indeed, it is essentially a restatement of the first.[3]

### III

The Court of Appeal upheld the superior court's determination as to Bittners' nonpossession of any compensable interest and, specifically, the

---

[2]See, for example, *City of Beverly Hills* v. *Albright* (1960) 184 Cal.App.2d 562, 564 [7 Cal.Rptr. 706], which quoted the following provision of a lease: " 'Should the leased premises be taken under condemnation proceedings or be acquired by any public authority in any other manner, the estate of Lessee shall cease and determine upon but not prior to the date when the Lessee shall be actually required to yield possession, and all liabilities of the Lessee hereunder accruing subsequent to such date shall cease . . . [.] *Lessee hereby assigns to Lessor his rights to any and all damages for property taken in any such proceeding and all such damages shall be payable to lessor.*' " (Italics added.)

[3]Quoting *Bi-State Dev. Agency* v. *Nikodem* (Mo.Ct.App. 1993) 859 S.W.2d 775, 780, the city argues: "Absent a termination clause, the lease terminates because the leasehold interest has been appropriated for public use, thus giving rise to a right of compensation. With a termination clause . . . , the leasehold interest terminates and expires by the terms of the very contract that created the interest in the first place. Thus, no property interest of the lessee has been appropriated for public use and there is no . . . right to compensation." It is unpersuasive. As explained in the text, under the Eminent Domain Law, a provision declaring that the lease terminates if all the property subject thereto is acquired for public use does not displace either the law's generally applicable rule that the lease terminates if all the property subject thereto is acquired for public use—which it essentially restates—or its generally applicable rule that such termination does not affect any right of the lessee to compensation related thereto. (Cf. *Beaverton Urban Renewal Agency* v. *Koning* (1981) 53 Or.App. 842, 848 [632 P.2d 1359, 1363] [stating that "it appears to be not only illogical, but inequitable, to imply an agreement by the tenant that he will not participate in a condemnation award where the lease simply recites what the law would be in the absence of any such recital"].)

meaning and effect of Clause 5, viz., that the provision declares that the lease terminates if the parcel is acquired for public use, and thereby deprives Bittners of any right it may have to compensation for the taking of its leasehold and other property, as an assignment to Robin Johnson as lessor and/or a waiver by Bittners as lessee.

Whether the Court of Appeal erred when it sustained the superior court's view concerning Bittners' nonpossession of any compensable interest is dependent, of course, on whether it erred when it sustained its view concerning the meaning and effect of Clause 5.

We need not resolve whether the Court of Appeal committed error as to Clause 5's meaning.[4]

That is because we believe that the Court of Appeal did indeed commit error as to Clause 5's effect.

The Court of Appeal purported to adopt what it called the "majority rule" under the general common law that a provision of a lease that declares that the lease terminates if all the property subject thereto is acquired for public use deprives the lessee of any right he may have to compensation for the taking of his leasehold and other property, as an assignment to the lessor and/or a waiver by the lessee.

We shall assume for argument's sake that what the Court of Appeal purported to adopt is, in fact, the "majority rule" under the general common law.[5]

---

[4]In passing, however, we note that we are somewhat dubious. To be sure, a declaration that the lease terminates if the parcel is acquired for public use *might* have been inserted: before the execution of the lease, Robin Johnson and Fielder and Bittner had apparently expressed concerns among themselves not only that the city might pronounce the building unfit for occupancy for health and safety reasons, but also that it might take the parcel in eminent domain. But a declaration of this sort appears, *in fact*, not to have been inserted. Recall Clause 5: "Should building be condemned thru [*sic*] no fault of tenant this lease will be terminated." Recall also that Fielder was the author. The language speaks in terms of the building's unfitness for occupancy rather than the parcel's ownership: it refers expressly to a "building," which, needless to say, contemplates a building and not a parcel; moreover, it turns explicitly on "fault," which is common to a pronouncement of unfitness but is alien to a taking. Further, the context implies that it was a pronouncement that the building was unfit for occupancy that was the threat Fielder sought to protect against, and not a taking of the parcel: the untoward consequences of a taking, which proceeds slowly, could be avoided or reduced by Bittners by invocation of the provision allowing termination on 30 days' written notice; but adverse effects attributable to a pronouncement of unfitness, which may occur suddenly, could not.

[5]For the "majority rule" under the general common law, the Court of Appeal relied on three authorities. *Fibreglas Fabricators, Inc.* v. *Kylberg* (Colo. 1990) 799 P.2d 371, does indeed

But the fact is, the Court of Appeal was precluded from adopting any such "majority rule." The Eminent Domain Law—which it failed even to cite—is to the contrary: a provision of a lease that declares that the lease terminates if all the property subject thereto is acquired for public use does *not* deprive the lessee of any right he may have to compensation for the taking of his leasehold or other property.

In what amount, if any, Bittners is due compensation for the taking of its leasehold or goodwill is a fact-bound question that was not reached by the superior court. It must be addressed by that court on remand and there resolved.[6]

IV

For the reasons stated above, we conclude that we must reverse the judgment of the Court of Appeal with directions to remand the cause to the superior court for proceedings not inconsistent with this opinion.

---

support a "rule" to this effect. (*Id.* at pp. 375-376 [stating that "[m]ost jurisdictions that have considered the legal effect of a condemnation clause providing only for automatic termination of the lease upon condemnation have held that because the lessee's leasehold interest is destroyed at the time of condemnation, the lessee no longer has any interest in the condemned property for which he or she should be compensated, and the lessee is foreclosed from sharing in the condemnation proceeds"].) But *United States* v. *Petty Motor Co.* (1946) 327 U.S. 372 [90 L.Ed. 729, 66 S.Ct. 596], supports it only in dictum. (Compare *id.* at p. 376 [90 L.Ed. at p. 734] [stating that, "with a clause for automatic termination of the lease on a taking of property for public use by governmental authority[,] . . . at least in the absence of a contrary state rule, the tenant has no right which persists beyond the taking and can be entitled to nothing"], with *id.* at p. 376, fn. 4 [90 L.Ed. at p. 733] [noting that the clause there considered expressly provided that the tenant " 'shall not be entitled to any part of any award that may be made for such taking' "].) And comment f to section 8.2 of the Restatement Second of Property, Landlord and Tenant, supports it not at all. (*Id.* at p. 274 [stating that "[a]n agreement that the tenant is not entitled to any part of the condemnation award *may be*"—but not *must be*—"implied from a provision in the lease that the lease is to terminate in the event of a taking by eminent domain" (italics added)].)

[6]The city argues that, even if the Court of Appeal erred to the extent it upheld the superior court's determination as to Bittners' nonpossession of any compensable interest *in its leasehold*, it did not err to the extent it upheld its determination as to its nonpossession of any compensable interest *in its goodwill*. We are not persuaded. Both the Court of Appeal and the superior court seem to have assumed that leasehold and goodwill stand or fall together. That is not the case. As the Eminent Domain Law suggests through Code of Civil Procedure sections 1263.510 to 1263.530, on the one side, and Code of Civil Procedure sections 1265.110 to 1265.160, on the other, goodwill can exist apart from a leasehold, and a leasehold can exist apart from goodwill. (See also fn. 1, *ante.*) The city asserts that Bittners failed to make the proof required by the Eminent Domain Law, in Code of Civil Procedure section 1263.510. That is true. But it failed to do so because it was not allowed an opportunity: at the bench trial, the superior court effectively limited the issue to the meaning and effect of Clause 5.

It is so ordered.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.