Filed 7/2/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THEE AGUILA, INC., | B289452 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC532354) |
| v. | |
| CENTURY LAW GROUP, LLP, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Rafael A. Ongkeko, Judge. Affirmed.

Law Office of Guinevere M. Malley and Guinevere M. Malley for Plaintiff and Appellant.

Century Law Group and Karen A. Larson for Defendants and Appellants.

_____

Thee Aguila, Inc. appeals from a judgment entered in a lawsuit involving proceeds awarded to its tenants, Edgar Fragoso and Eva Meneses, as part of an eminent domain proceeding. The trial court determined that the parties' lease agreement did not support Thee Aguila's claims, and that Thee Aguila's asserted claims were collaterally estopped by the judgment in the eminent domain proceeding. We agree with the trial court and affirm.

## BACKGROUND

On February 1, 2008, Fragoso and his mother, Meneses, signed a 15-year lease for commercial property located at 2800 Firestone Boulevard in South Gate to open the El Parral Restaurant. Central to this dispute, the form lease provided:

"13. CONDEMNATION

"If the Premises or any portion thereof are taken by the power of eminent domain, or sold by Landlord under the threat of exercise of said power (all of which is herein referred to as 'condemnation'), this Lease shall terminate as to the part so taken as of the date the condemning authority takes title or possession, whichever occurs first. . . . [¶] . . . [¶]

"All awards for the taking of any part of the Premises or any payment made under the threat of the exercise of the power of eminent domain shall be the property of the Landlord, whether made as compensation for the diminution of the value of the leasehold or for the taking of the fee or as severance damages; provided, however, that Tenant shall be entitled to any award for loss or damage to Tenant's trade fixtures and removable personal property."

In 2009, the Los Angeles Unified School District (LAUSD) filed a complaint in eminent domain seeking to have the property condemned. (L.A. Super. Ct. No. BC416163.) The trial court

2

issued an order for prejudgment possession in favor of LAUSD in November 2009.

LAUSD's eminent domain complaint named, among other interested defendants, El Parral, Edgar Fragoso individually and doing business as El Parral, and Meneses and Fragoso's El Parral landlord, Thee Aguila.

In its answer to the eminent domain complaint, Thee Aguila claimed "by assignment, each and every award herein for the taking, including [El Parral's] loss of good will, but not including its[] trade fixtures." Meneses, Fragoso, and El Parral each claimed in their answers they were entitled to "compensation for loss of business goodwill relating to the operation of [El Parral] on the leased property."

The trial court issued its judgment on the eminent domain complaint and final order condemning the property on March 9, 2011. In that order, the trial court awarded Thee Aguila a total of $6,198,100 for its interest in the property. Meneses, Fragoso, and El Parral were awarded a total of $6,100,000 for their interest in the property, including "any claims for leasehold value, goodwill, fixtures and equipment, relocation benefits, litigation expenses, interest and costs . . . ."

On January 6, 2014, Thee Aguila filed a complaint against, among others, Meneses and Fragoso. The operative complaint at the time of trial was the second amended complaint, filed May 28, 2014.[1] The thrust of Thee Aguila's complaint was that Meneses

---

[1] The second amended complaint alleges causes of action for breach of contract, conversion, breach of the implied covenant of good faith and fair dealing, fraud, constructive trust, and intentional interference with contractual relations. The complaint alleges that of $350,000 in key money Meneses and

3

and Fragoso had agreed in their lease that any award they received as a result of condemnation was to be remitted to Thee Aguila, and *if* the lease could not be so construed, there was a separate *oral* agreement by which Meneses and Fragoso had promised Thee Aguila all of the proceeds awarded in the eminent domain proceeding.[2] As a fallback, the complaint alleged that Meneses and Fragoso had never completed the transaction to purchase rights to operate the El Parral, and that the prior owners (the Orozcos) had assigned all of those rights back to Thee Aguila.[3]

The trial court severed certain questions of law based on input from the parties and conducted a two-day bench trial in

---

Fragoso were to pay, they still owed $200,000, and that Meneses and Fragoso owed Thee Aguila $67,000 in unpaid rent. Fragoso and Meneses cross complained against Thee Aguila and Henry Aguila. The operative cross-complaint at the time of trial was the third amended cross-complaint alleging causes of action for abuse of process, fraud, breach of contract, breach of indemnification, and declaratory relief.

[2] The trial court summarized Thee Aguila's complaint succinctly: "Notwithstanding the stipulated judgment in [the LAUSD eminent domain action, Thee Aguila], the lessor, lays claim to El Parral's entire condemnation award."

[3] On November 17, 2016, Thee Aguila filed a motion for leave to amend a third amended complaint. The trial court denied Thee Aguila's motion for leave to amend. The trial court's order denying Thee Aguila's motion is not part of the record on appeal, and Thee Aguila does not challenge the trial court's denial of that motion on appeal.

April 2017.[4] The trial court issued its rulings on August 29, 2017. It concluded, in pertinent part, that the lease's condemnation clause did not give Thee Aguila an interest in El Parral or entitlement to monies awarded to El Parral in the eminent domain judgment. The trial court also concluded that the eminent domain judgment collaterally estopped Thee Aguila from any of its various claims to the money awarded to El Parral in the eminent domain judgment.

In December 2017, the trial court deemed its written rulings a statement of decision. The trial court concluded that there were no further issues for the trial court or for a jury to consider, and entered judgment in favor of Meneses, Fragoso, and the Century Law Group. Thee Aguila filed a motion for new trial, which the trial court denied on March 29, 2018. Thee Aguila timely appealed.

## DISCUSSION

### A. Condemnation Clause

Thee Aguila contends that the El Parral lease's condemnation clause gave Thee Aguila the exclusive right to recover all moneys from any condemnation of the property (except "loss or damage to . . . trade fixtures and removable

---

[4] The trial court ordered the parties to meet and confer regarding issues to be tried to the bench. After the parties did so, they stipulated as to certain issues to be tried, and the trial court issued an order based on the parties' stipulation. Thee Aguila has not provided us a copy of that order. Nevertheless, in a minute order dated August 29, 2017, the trial court stated that it had tried the issues identified in the order. The trial court identified each of the issues in its rulings. Most of the issues tried to the bench arose from the declaratory relief cause of action in the third amended cross-complaint.

5

personal property"). As a result, Thee Aguila argues, it was entitled to recover moneys awarded for loss of goodwill resulting from LAUSD's taking.[5] We review questions of contract interpretation de novo. (*Employers Mutual Casualty Co. v. Philadelphia Indemnity Ins. Co.* (2008) 169 Cal.App.4th 340, 347.)

As Meneses and Fragoso point out, and as we have recently explored, the owner of a business conducted on property taken by eminent domain is entitled to compensation for loss of goodwill resulting from the taking. (Code Civ. Proc., § 1263.510, subd. (a); see *Los Angeles County Metropolitan Transportation Authority v. Yum Yum Donut Shops, Inc.* (2019) 32 Cal.App.5th 662, 668.) Absent a contractual provision to the contrary, Thee Aguila is not entitled to compensation for El Parral's goodwill. (See also *City of Vista v. Fielder* (1996) 13 Cal.4th 612, 618 (*Fielder*).)

Thee Aguila cites a single case in support of its lease agreement interpretation argument: *Fielder*. Thee Aguila points to language in *Fielder* that explains that the general rule that "[u]nder the Eminent Domain Law, a provision of a lease that declares that the lease terminates if all the property subject thereto is acquired for public use does *not* deprive the lessee of any right he may have to compensation for the taking of his leasehold or other property . . . may indeed be displaced by a provision of a lease to the contrary." (*Fielder*, *supra*, 13 Cal.4th at p. 618.) Besides pointing out that parties may contract

---

[5] Thee Aguila limits its contentions about interpretation of the lease agreement to a discussion of El Parral's goodwill. We similarly limit our discussion.

6

between themselves to allocate eminent domain awards, *Fielder* offers Thee Aguila no assistance.

Thee Aguila bases its contentions here on language in the lease that states "any payment made under the threat of the exercise of the power of eminent domain shall be the property of the Landlord, whether made as compensation for the diminution of the value of the leasehold or for the taking of the fee or as severance damages . . . ." But *Fielder* expressly distinguishes the lessee's leasehold interest from lessee's interest in goodwill "*as owner of a business.*" (*Fielder, supra*, 13 Cal.4th at p. 617, fn. 1.) Rejecting an argument that a tenant's interest in its "leasehold and goodwill stand or fall together" with respect to a contract that provided for termination of the lease in the event of condemnation, the *Fielder* court observed: "That is not the case. . . . [G]oodwill can exist apart from a leasehold, and a leasehold can exist apart from goodwill." (*Id.* at p. 620, fn. 6.)

The Legislature has determined that a business owner's goodwill for a business operated on property taken by eminent domain is compensable separate and apart from the parties' interests in the property taken. The Supreme Court in *Fielder* has likewise distinguished between property taken by eminent domain and the goodwill held by the operator of a business located on property taken by eminent domain. And neither the language in the form lease nor Thee Aguila's arguments give us any reason to read the lease language more expansively or as counter to Code of Civil Procedure section 1263.510.

## B.    Collateral Estoppel

Thee Aguila contends that the trial court erred by applying the doctrine of collateral estoppel to all of its claims (including goodwill and $267,000 in unpaid rent and key money) to moneys

7

awarded to Meneses and Fragoso in LAUSD's eminent domain proceeding.[6]

Thee Aguila argues that because it and El Parral, Fragoso, and Meneses were all defendants in the eminent domain

---

[6] The parties' dispute about unpaid rent centers on rent Thee Aguila claims was due it for December 2009 and January 2010. On November 6, 2009, the trial court issued in the eminent domain proceeding an order for prejudgment possession of the property subject to the parties' lease in favor of LAUSD. By its own terms, the lease terminated "as of the date the condemning authority [took] title or possession, whichever occur[red] first." The lease also terminated as a matter of law; "[w]here all the property subject to a lease is acquired for public use, the lease terminates." (Code Civ. Proc., § 1265.110.) That termination was effective when "the plaintiff [was] authorized to take possession of the property as stated in an order for possession." (Code Civ. Proc., § 1265.140.) Thee Aguila was not entitled to rent for December 2009 and January 2010 after a prejudgment possession order in favor of LAUSD was issued in November 2009. If LAUSD wished to claim rent for those months, it could have done so in its negotiations with Meneses and Fragoso, whom LAUSD presumably allowed to holdover for the additional two months they operated El Parral.

The dispute regarding so-called key money turns on payments made pursuant to a lease addendum providing for $200,000 in "additional rent" and another $150,000 Thee Aguila contended was "accounted for outside the" parties' lease agreement. Any "additional rent" argument goes the way of Thee Aguila's unpaid rent argument. Thee Aguila's complaint admits that Meneses and Fragoso had paid $150,000 before LAUSD filed its condemnation complaint. We could locate no evidence in the record of any other payment of key money or "additional rent" due before the lease terminated.

8

proceeding, they were not adversaries in that proceeding, and the judgment in that action has no preclusive effect as between defendants, but rather only as between LAUSD and any defendant. "The trial court's application of the doctrine of collateral estoppel or issue preclusion is a question of law subject to de novo review." (*Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1507.)

"Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. [Citation.] Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341, fn. omitted.)

Although it appears to be the primary thrust of Thee Aguila's argument here, there is no hard and fast requirement that the same parties to the current litigation were adverse in a prior action. (Cf. *City of Santa Cruz v. MacGregor* (1960) 178 Cal.App.2d 45, 49 [codefendants in condemnation proceedings "are, in substance, litigating against each other"].) The doctrine requires only that the issue sought to be precluded from relitigation was litigated to finality in the prior action with the party (or its privity) against whom preclusion is sought.

In its answer to the eminent domain complaint, Thee Aguila "claim[ed] by assignment, each and every award herein for

9

the taking, including the tenant's loss of [goodwill], but not including its[] trade fixtures."  In their answers to the eminent domain complaint, Meneses, Fragoso, and El Parral claimed that they were "entitled to compensation for loss of business goodwill relating to the operation of [El Parral] on the leased property."  In the eminent domain judgment, the trial court noted that Thee Aguila "assert[ed], inter alia, just compensation for the property, severance damages, precondemnation damages for loss of rental income, a claim for the tenant's loss of business goodwill, and for litigation expenses and costs of suit."  The judgment also noted that LAUSD and Thee Aguila had "agreed on a full and final settlement of any and all issues in this matter . . . ."  The judgment continued:  Meneses, Fragoso, and El Parral "assert[ed], inter alia, just compensation for [the] leasehold interest, loss of business goodwill, leasehold improvements, and for litigation expenses and costs of suit."  Meneses, Fragoso, and El Parral agreed with LAUSD "to a full and final settlement of any and all of [their] claims, including without limitation any claims for leasehold value, goodwill, fixtures and equipment, relocation benefits, litigation expenses, interest and costs . . . ."

The question of what moneys were to be paid to Thee Aguila and what moneys were to be paid to Meneses and Fragoso for the condemnation, then, were issues decided in the eminent domain proceeding.[7]  That includes moneys Thee Aguila would have been entitled to had the lease continued in effect.

---

[7] At his deposition in the eminent domain proceeding, Henry Aguila and Thee Aguila's attorney appear to have acknowledged that the eminent domain proceeding was conclusive as to the parties' claims to moneys resulting from condemnation.  LAUSD's attorney asked Aguila "Have you

10

Those issues were necessarily decided in the eminent domain proceeding: "[W]here there are divided interests in property acquired by eminent domain, the value of each interest and the injury, if any, to the remainder of such interest shall be separately assessed and compensation awarded therefor. . . . [¶] . . . [¶] . . . The plaintiff may require that the amount of compensation be first determined as between plaintiff and all defendants claiming an interest in the property.  Thereafter, *in the same proceeding, the trier of fact shall determine the respective rights of the defendants in and to the amount of compensation awarded and shall apportion the award accordingly*." (Code Civ. Proc., § 1260.220, italics added.)  Thee Aguila does not dispute that the eminent domain judgment is final or that it was a party in the eminent domain proceeding.  We affirm the trial court's collateral estoppel conclusion.[8]

---

resolved your claim for compensation with El Parral on the goodwill matter?"  After an evasive response, LAUSD further inquired:  "So you are just withdrawing [your claim for loss of business goodwill] altogether and you are not making a claim even against El Parral?"  Aguila's attorney responded:  "We are not seeking to apportion any portion of the business operator's goodwill claim, if any."

[8] At argument, Thee Aguila fervently argued about an alleged assignment it obtained in December 2012 (well after the March 2011 condemnation order) from a couple (the Orozcos) who ran El Parral before Meneses and Fragoso and purportedly owned the temporary operating permit under which Meneses and Fragoso operated.  In the trial court and here, Thee Aguila argued that the escrow for transfer of the temporary operating permit never closed, and therefore the right to operate El Parral never passed to Meneses and Fragoso.  El Parral's goodwill— under this theory—belonged to the Orozcos, who assigned it to

11

## C. Motion for New Trial

Although Thee Aguila appealed from the trial court's order denying its motion for new trial, Thee Aguila has presented neither record citations nor authority for its argument that the trial court abused its discretion.  "It is the appellant's responsibility to support claims of error with citation and authority; this court is not obligated to perform that function on appellant's behalf."  (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656.)  We are presented here with an 18-volume clerk's transcript, four volumes of reporter's transcript, and a single paragraph of argument in Thee Aguila's brief that does not even assert an abuse of discretion, much less attempt to explain the abuse.  We will not attempt to divine an argument where Thee Aguila failed to draft one.

---

Thee Aguila.  While this theory does not appear from the record to have been at issue in the bench trial, this argument fails for the same reason the rest of Thee Aguila's arguments fail.  Meneses and Fragoso *were* the business owners when LAUSD took the property, regardless of whether the title to the temporary operating permit ever exchanged hands.  The Orozcos were *not* operating El Parral at the time of the condemnation.  And if Thee Aguila believed El Parral's goodwill claim in the eminent domain proceeding belonged to someone other than Meneses and Fragoso, the eminent domain proceeding was the time to raise that issue.  (See *McFadden v. Los Angeles County Treasurer & Tax Collector* (2019) 34 Cal.App.5th 1072, 1079.)

## DISPOSITION

The judgment and the trial court's order denying Thee Aguila's motion for new trial are affirmed.  Respondents are awarded costs on appeal.

CERTIFIED FOR PUBLICATION


CHANEY, Acting P. J.

We concur:


BENDIX, J.


WEINGART, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.