Filed 7/22/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AQUILES G. JIMENEZ,<br><br>    Defendant and Appellant. | D081951<br><br><br><br>(Super. Ct. No. CR117399) |

APPEAL from an order of the Superior Court of San Diego County, Yvonne E. Campos, Judge.  Reversed and remanded.

Aurora E. Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

Aquiles Jimenez appeals from an order denying his second petition for resentencing under Penal Code[1] section 1170.95 (now § 1172.6).[2] When Jimenez filed his first petition, the trial court held an evidentiary hearing and denied relief based on its own independent finding that he was guilty of second degree murder as a direct aider and abettor on an implied malice theory. We affirmed the court's denial of Jimenez's first petition solely on sufficiency of evidence grounds. (See *People v. Jimenez* (Dec. 1, 2022, D079630) [nonpub. opn.].) The trial court later denied his second petition at the prima facie stage on the ground that there was no legal basis to revisit its prior ruling. We now consider whether Jimenez is entitled to relief on his second petition.

Jimenez contends on appeal that Senate Bill No. 775 (Stats. 2021, ch. 551 (Senate Bill 775)) and our Supreme Court's decision in *People v. Reyes* (2023) 14 Cal.5th 981 constitute changes in the law which make collateral estoppel[3] and law of the case inapplicable. Jimenez also contends, in supplemental briefing, that *People v. Pittman* (2023) 96 Cal.App.5th 400 (*Pittman*) changed the law regarding how courts should consider an

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     Effective June 30, 2022, section 1170.95 was recodified without substantive change in section 1172.6, pursuant to Assembly Bill No. 200 (2021–2022 Reg. Sess.). (See Stats. 2022, ch. 58, § 10.) We refer to the current codification throughout this opinion.

[3]     Although the modern term for collateral estoppel is issue preclusion (*Samara v. Matar* (2018) 5 Cal.5th 322, 326), we will refer to the doctrine as collateral estoppel to be consistent with the terminology used by the parties. The People have not made any argument based on res judicata or claim preclusion.

offender's youth when determining whether he acted with implied malice. (*Id.* at p. 417.)

We conclude that since the time of the trial court's original ruling of August 2021, there have been significant changes in the law relating to the culpability of defendants who were young adults in their teens or early 20s at the time of their crimes. The nature and timing of these rapid developments are such that we cannot presume the trial court had an adequate opportunity to consider evidence of Jimenez's youth (19 years old) and brain development in deciding whether he acted with malice. Nor can we presume that the defense had an adequate incentive to present new evidence on the issue based on the law as it then existed. Because the law has changed significantly, and we did not decide this issue in the prior appeal, collateral estoppel and law of the case do not bar Jimenez's second petition. Although we express no view on how the trial court should rule on remand, we conclude that the error is not harmless on this record. Accordingly, we reverse and remand for a new evidentiary hearing and decision consistent with current law.

FACTUAL AND PROCEDURAL BACKGROUND

*A. Paul J.'s Killing*

We repeat relevant facts as summarized in our prior opinion affirming Jimenez's conviction.[4]  (See *People v. Jimenez, supra*, D079630.)

In August 1990, Cynthia Wilson told an acquaintance that she was upset with the victim, Paul J., because of how he treated her when they were dating.  Wilson told the acquaintance that she wanted to get a gun to shoot Paul J. to "put him out of his misery."  Around that time, Wilson began dating Jimenez, and she told him that she was afraid of Paul J. and that he had hurt her emotionally.  Jimenez, who sold and used methamphetamine, knew Paul J. was a drug dealer.  Jimenez was also a gun collector, and at Wilson's request, he took her out to practice shooting with one of his guns.

In the middle of a night in September 1990, Wilson asked Jimenez to drive her to a hotel to meet with Paul J.  Wilson had been using methamphetamine that night, but Jimenez was not using drugs at the time because he was on pain medication for an injury.  When they went to

---

[4]  Because Jimenez pled guilty without a trial, our factual summary relies on the preliminary hearing transcript, which was part of the record for the evidentiary hearing at issue in the prior appeal.  We recognize that this appeal involves a determination at the prima facie stage, however, and it is questionable whether we may consider facts from the preliminary hearing at this stage if they were not admitted by Jimenez as part of his plea.  (See *People v. Davenport* (2021) 71 Cal.App.5th 476, 483 [court could not consider preliminary hearing testimony that defendant shot victim at close range because defendant never stipulated or admitted to it as a factual basis for his guilty plea]; but see *People v. Mares* (2024) 99 Cal.App.5th 1158, 1166–1168, review granted May 1, 2024, S284232 [court could consider preliminary hearing transcript to show that defendant was prosecuted only on an actual killer theory].)  This issue is pending before our Supreme Court in *People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279760.  We need not resolve this question, however, because we would reach the same result either way.

Paul J.'s hotel room, Paul J. offered Wilson methamphetamine and went to the bathroom to prepare the drugs, where Wilson and Paul J. began arguing. Jimenez was adjusting the radio when Wilson pulled out a small pistol belonging to Jimenez, which he usually kept in his truck's glove compartment, and shot Paul J. a few times. Jimenez said during a parole hearing that he did not realize Wilson had taken his gun until that moment, and that she had hidden it under her jacket. He also denied knowing that Wilson was going to shoot Paul J.

After Wilson first shot Paul J. and he fell to the floor, Jimenez pulled the phone out of the wall socket to prevent Paul J. from calling anyone. During his probation interview, Jimenez said he heard Paul J. ask, "Oh my God, why did you shoot me?" Wilson then asked Jimenez to also shoot Paul J., but when Jimenez refused, she shot Paul J. again herself. Jimenez then took the gun from Wilson and they left the hotel in Jimenez's truck. Jimenez told probation that he thought Paul J. was still alive when they left the hotel room. Later that night, Jimenez threw the gun over the Coronado bridge.

The following morning, a hotel clerk found Paul J. dead in his room. An autopsy determined that he died from two gunshot wounds through the chest and back. During a subsequent search of Jimenez's residence, law enforcement officers found ammunition matching the type found in Paul J.'s room.

Jimenez was 19 years old at the time of the offense, and Wilson was 20 years old.

*B. Jimenez's First Petition for Resentencing*

Jimenez pled guilty to aiding and abetting second-degree murder (§ 187, subd. (a)) as part of a plea bargain, and he was sentenced to an

5

indeterminate term of 15 years to life. Jimenez filed his first petition for resentencing in 2019 pursuant to amended section 1172.6. After the trial court appointed counsel and held an evidentiary hearing in July 2021, the court denied Jimenez's petition in August 2021, finding that he was ineligible for relief under section 1172.6 because he "was not charged in such a way that the prosecution could proceed on a felony-murder or natural and possible consequences theory."

Alternatively, the court found that the record evidence proved Jimenez's guilt beyond a reasonable doubt as an aider and abettor of second degree murder who acted with implied malice. The court noted that Jimenez had weapons and ammunition at his residence that matched the murder weapon, he drove Wilson to the hotel, he "did nothing to stop the first or subsequent shots," and he admitted to pulling the phone out of the wall while Paul J. was still alive. The court found that Jimenez supplied Wilson with a gun, he went shooting with her, and he knew that Wilson "hated the victim." The court further noted that Jimenez did not attempt to render aid to the victim or report the crime to the police, and he disposed of the murder weapon.

Although Jimenez's attorney made brief reference to Jimenez's status as a "youthful offender" at the evidentiary hearing, the trial court's order did not mention his age or maturity level.

Jimenez timely appealed the order denying his first petition. We affirmed the order in an unpublished opinion in December 2022 on the ground that substantial evidence supported the trial court's finding that Jimenez was guilty beyond a reasonable doubt of directly aiding and abetting an implied malice, second-degree murder under current law. (*People v. Jimenez, supra*, D079630.)

6

*C. Jimenez's Second Petition for Resentencing*

In September 2022, before we issued our opinion in his first appeal, Jimenez filed a second petition for resentencing under section 1172.6 asserting that he was entitled to relief based on amendments that went into effect with Senate Bill 775 in January 2022. The People opposed the petition, arguing that Jimenez was procedurally barred from relief by the collateral estoppel and law of the case doctrines. Through appointed counsel, Jimenez filed a reply in December 2022.

In March 2023, the trial court denied Jimenez's second petition at the prima facie stage, finding that the changes in Senate Bill 775 do not apply to Jimenez as the direct aider and abettor in the underlying murder. Referencing Jimenez's first petition and our prior opinion, the court further found there was no legal basis entitling him to a second petition for resentencing.

Jimenez timely appealed the denial of his second petition.

DISCUSSION

The People contend that Jimenez's second petition is barred by the doctrines of collateral estoppel and law of the case. In response, Jimenez argues that he is entitled to relief because the law has changed regarding whether and how the trier of fact may consider an adult offender's youth in determining whether he acted with implied malice. Jimenez relies on *Pittman*, a case decided in October 2023, in which the Court of Appeal held that a defendant who was 21 years old at the time of the offense was entitled to remand for the trial court to consider his youth in determining whether he acted with implied malice. (*Pittman, supra*, 96 Cal.App.5th at pp. 416, 418.) The People argue that *Pittman* did not constitute a "concrete" or "significant" change in the law. We agree with Jimenez that there have been significant

7

changes in the law governing young adult offenders since the time of the hearing and ruling on his first petition. We therefore conclude that the doctrines of collateral estoppel and law of the case do not bar Jimenez's second petition. Accordingly, we reverse and remand for a new evidentiary hearing and ruling.

*A. Recent Case Law on Youthful Offenders*

*Pittman* is one of the latest in a series of recent cases addressing the role an offender's youthfulness plays in various contexts, from sentencing to assessing guilt. The first to apply this developing case law in a section 1172.6 context was *People v. Harris* (2021) 60 Cal.App.5th 939, review granted April 28, 2021, S267802, and dismissed September 28, 2022 (*Harris*).

In *Harris*, which was decided in February 2021, the Court of Appeal reversed an order denying Harris's petition for resentencing at the prima facie stage. (*Harris, supra*, 60 Cal.App.5th at p. 961.) The court concluded that an evidentiary hearing was necessary to determine, among other things, whether "given Harris's youth at the time of the crime" (17 years old) he was a major participant for felony-murder purposes who was "actually aware 'of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants.' " (*Id.* at p. 960.) In support of its decision that youth was a relevant consideration, the court cited Eighth Amendment precedents on cruel and unusual punishment recognizing, in the context of sentencing for juvenile offenders, that children under the age of 18 are more immature, reckless, and impetuous than adults and may fail to appreciate the risks and consequences of their actions. (*Ibid.* [citing *Graham v. Florida* (2010) 560 U.S. 48; *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*); *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*)].)

*Harris* was the only section 1172.6 case on this issue at the time of the trial court's August 5, 2021 ruling on Jimenez's first petition. Critically, *Harris* only referred to the Eighth Amendment "case law's recognition of the science relating to *adolescent* brain development . . . ." (*Harris, supra*, 60 Cal.App.5th at p. 960, italics added.) At that time (and still today), it was firmly settled that these Eighth Amendment cases establish a "bright line

9

rule" applicable only to juvenile offenders under the age of 18. (*People v. Perez* (2016) 3 Cal.App.5th 612, 617; see also *Roper v. Simmons* (2005) 543 U.S. 551, 574 [acknowledging the "qualities that distinguish juveniles from adults do not disappear when an individual turns 18" but concluding that "a line must be drawn" at age 18]; *People v. Flores* (2020) 9 Cal.5th 371, 429 [rejecting invitation "to expand *Roper* to reach those ages 18 to 21" based on research showing "that young adults suffer from many of the same cognitive and developmental deficiencies as adolescents"].)

The first few cases following *Harris* also involved defendants who were under the age of 18 at the time of the offense. As we will show, however, the law on this issue has since expanded well beyond *Harris* in two important ways: (1) it has been applied to other mental state requirements, including implied malice; and (2) even more profoundly, it has been extended beyond its Eighth Amendment roots to young adults who were in their teens and early 20s at the time of their crimes.

About four weeks after the trial court denied Jimenez's first petition, another Court of Appeal decided in *In re Moore* (2021) 68 Cal.App.5th 434 (*Moore*). In vacating a robbery-murder special-circumstance finding, the court held that Moore's age of 16 years old at the time of the offense was a relevant factor in determining whether he acted with reckless indifference to human life. (*Moore*, at pp. 454–455.)

*People v. Ramirez* (2021) 71 Cal.App.5th 970 was decided shortly thereafter in November 2021. There, the court found that the defendant's youth at the time of the offense, as a 15-year-old, "greatly diminishe[d] any inference he acted with reckless disregard for human life" during an attempted armed carjacking. (*Id.* at pp. 990–991.) In concluding there was insufficient evidence that Ramirez had the requisite culpable mental state,

10

the court reasoned that his "age may well have affected his calculation of the risk of death posed by using the firearm in the carjacking, as well as his willingness to abandon the crime." (*Id.* at p. 991.)

These early post-*Harris* cases involved defendants under the age of 18 when they committed their crimes. (See also *In re Harper* (2022) 76 Cal.App.5th 450, 470 ["[a]ssuming without deciding that youth is a proper factor among many" the court "*may* consider under the totality of the circumstances," but concluding it is not "a *decisive* factor whenever the defendant was a minor at the time of the offense" and denying habeas relief to defendant who was 16 at time of murder]; *People v. Keel* (2022) 84 Cal.App.5th 546, 558–559 (*Keel*) ["We agree youth can be a relevant consideration—potentially an important one, depending on the facts of the case—bearing on whether a juvenile defendant[,]" who was 15 years old at the time of the offense, "acted with reckless indifference to human life."].)

In the years that followed, however, courts extended *Harris* to defendants like Jimenez who committed their offenses between the ages of 18 and 25. For example, in *People v. Mitchell* (2022) 81 Cal.App.5th 575, decided in July 2022, the trial court expressly considered Mitchell's youth even though he was already 18 years old at the time of the offense. The trial court observed that Mitchell was "just a teenager at the time," but nonetheless still found he was a major participant who acted with reckless indifference. (*Id.* at p. 586.) The Court of Appeal affirmed the denial of Mitchell's petition, but also took into account his age in noting that "[y]outh can distort risk calculations." The court concluded that Mitchell's youth was "overborne" by other factors showing his indifference to the victim's life. (*Id.* at p. 595.)

In *People v. Jones* (2022) 86 Cal.App.5th 1076 (*Jones*), decided in December 2022, the Court of Appeal concluded that legally sufficient

11

evidence supported a finding that Jones was a major participant in the underlying robbery and acted with reckless indifference to human life. (*Id.* at p. 1088.) The court, however, still reversed the order denying Jones's petition for resentencing and remanded the case for the trial court to "have a meaningful opportunity to consider Jones's youth as part of the totality of the circumstances germane to determining whether he was a major participant who acted with reckless indifference to human life." (*Id.* at p. 1093.) Notably, Jones was already 20 years old at the time of the underlying offense, and the court acknowledged that the defendants in *Harris* and *Moore* were both juveniles. (*Id.* at pp. 1092–1093.) The court also observed that Jones "volunteered to perpetrate the crime he helped to plan and then grabbed a loaded gun to do it[.]" (*Ibid.*) Nonetheless, the court believed it was "in the interest of justice" to allow the trial court to consider Jones's youth. (*Id.* at p. 1093.)

In *People v. Oliver* (2023) 90 Cal.App.5th 466 (*Oliver*), decided in March 2023, the Court of Appeal "acknowledge[d] the trajectory of the legislation and case law recognizing the psychological and neurological differences between youthful and adult offenders, which both lessen the culpability of the young and increase the likelihood of their rehabilitation." (*Id.* at p. 488.) The court declined, however, to decide whether Oliver, who was 23 years old at the time of the offense, fit the definition of "youthful." (*Id.* at p. 489.) The court also declined to decide whether it is incumbent on a trial court to expressly consider youth. (*Id.* at p. 488.) The court instead concluded that even if the trial court was required to consider Oliver's youth, any such error was harmless because there was no evidence that Oliver's criminal behavior was motivated by impulsivity or vulnerability to peer pressure, two

hallmarks of youthful offenders. (*Id.* at pp. 488–489, citing *Miller, supra*, 567 U.S. at p. 461.)

Several months after *Oliver* came *Pittman*. Pittman was 21 years old at the time he and two juvenile cohorts committed a robbery that resulted in death. (*Pittman, supra*, 96 Cal.App.5th at pp. 403–404, 405.) In reversing the trial court's denial of Pittman's resentencing petition, the Court of Appeal concluded that Pittman's age at the time of the offense was relevant, and that "[t]he policy interests underlying the felony-murder cases—that youth is relevant to a criminal defendant's ability to perceive risk and consequences, and therefore to the level of culpability—apply equally in the context of implied malice murder." (*Id.* at p. 417.) The court also concluded that the trial court's error in not addressing Pittman's youth was prejudicial because the evidence showed he committed the offense with younger peers, acted impulsively and rashly, appeared to have selected weapons spontaneously, and was motivated to commit the crime by "happenstance." (*Id.* at p. 418.) Even though Pittman was already 21 years old at the time of the offense, this did "not dissuade" the court, which noted "[t]he defendant in *Jones* was 20 years old, and yet the court deemed remand warranted to consider his relative youth." (*Ibid.*)

In addition to these developments in the case law, the Legislature has enacted similar changes by statute in recent years. For example, the Legislature has raised the cut-off age for youth offender parole hearings to 25 based on "scientific evidence that neurological development, particularly in areas of the brain relevant to judgment and decision making, continues beyond adolescence and into the mid-20's." (*People v. Hardin* (2024) 15 Cal.5th 834, 846.) Likewise, effective January 1, 2022, prosecutors must now consider a defendant's youthful age as a mitigating factor during plea

negotiations—with "youth" defined to include "any person under 26 years of age on the date the offense was committed." (§ 1016.7, subd. (b).) This definition has also been incorporated into the determinate sentencing scheme, which now provides a rebuttable presumption that offenders under 26 years of age should be sentenced to the low prison term. (§ 1170, subd. (b)(6)(B); Cal. Rules of Court, rule 4.420(e)(2).) And the Legislature has amended section 4801 to provide that, for any prisoner who committed his or her offense "at 25 years of age or younger," the parole board "shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law." (§ 4801, subd. (c).)

*B. Analysis*

Considering this evolving landscape, and applying de novo review, we reject the People's contention that Jimenez's second petition is barred by collateral estoppel. (See *Thee Aguila, Inc. v. Century Law Group, LLP* (2019) 37 Cal.App.5th 22, 28 [a trial court's application of collateral estoppel or issue preclusion is a question of law subject to de novo review].) Collateral estoppel " 'bars relitigation of issues earlier decided "only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." ' [Citation.] 'The party

14

asserting collateral estoppel bears the burden of establishing these requirements.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 451–452 (*Curiel*).)

Even if these requirements for collateral estoppel are met, however, " 'the doctrine will not be applied if such application would not serve its underlying fundamental principles' of promoting efficiency while ensuring fairness to the parties.' [Citation.]" (*Curiel, supra,* 15 Cal.5th at p. 454.)  A well-settled equitable exception to the general rule of collateral estoppel " 'holds that preclusion does not apply when there has been a significant change in the law since the factual findings were rendered that warrants reexamination of the issue.' [Citation.]  'This exception ensures basic fairness by allowing for relitigation where "the change in the law [is] such that preclusion would result in a manifestly inequitable administration of the laws." [Citation.]  It also reflects a recognition that in the face of this sort of legal change, the equitable policies that underlie the doctrine of issue preclusion—"preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation" [citation]—are at an ebb.' " (*Ibid.*)

We conclude that even assuming the threshold requirements of collateral estoppel are met, this equitable exception applies here.  Because California cases only recently began to require consideration of a young adult offender's age in resentencing petitions involving implied malice murder convictions, there have been material changes in the law since the trial court's original ruling which warrant reexamination of the factual question whether Jimenez acted with malice.  Based on the law in effect when the trial court denied Jimenez's first petition and found him guilty on an implied malice theory, the court may well have believed that Jimenez's youth was irrelevant because he was not a juvenile at the time of the offense.  The only

15

case on the issue at the time was *Harris*, which involved a 17-year-old offender—and the court there cited new scientific evidence on "*adolescent brain development*" and relied exclusively on Eighth Amendment case law drawing a bright line between juvenile and adult offenders. (*Harris, supra*, 60 Cal.App.5th at p. 960, italics added.) In these circumstances, the trial court could have felt compelled to conclude that *Harris*'s discussion of youth did not apply to young adults. The fact that the trial court did not mention Jimenez's youth in its ruling on the first petition further supports this inference. (*Jones, supra*, 86 Cal.App.5th at pp. 1091–1093.)

The timing of the trial court's August 2021 ruling on Jimenez's first petition is similar to that in *Jones*, which was the first decision to reverse the denial of a resentencing petition on the ground that the trial court should consider the maturity level of a young adult. (*Jones, supra*, 86 Cal.App.5th at pp. 1091–1093.) In *Jones*, as here, the trial court denied the defendant's section 1172.6 petition in the months after the *Harris* decision and before any of the subsequent cases expanding *Harris*. (*Id*. at p. 1092.) At the resentencing hearing in *Jones*, defense counsel cited Jones's age at the time of the murder (20 years old) and characterized him as immature, but the trial court did not mention his age or maturity in its ruling. (*Id*. at pp. 1091–1092.) In these circumstances, the Court of Appeal concluded "it is unlikely in this particular instance that the trial court could have known to consider Jones's age and maturity level, *particularly to the extent* now required by cases issued after" briefing was completed. (*Id*. at p. 1092, citing *People v. Chambers* (1982) 136 Cal.App.3d 444, 457 [presumption that the court follows the law does not apply where the law is not yet established].) Accordingly, "in the interest of justice," the *Jones* court decided "it is best for

16

the trial court to have a meaningful opportunity to consider Jones's youth as part of the totality of circumstances. . . ." (*Jones*, at p. 1093.)

We reach the same conclusion here. As in *Jones*, principles of fairness require that Jimenez be given a new evidentiary hearing for the trier of fact to address his youthfulness under current case law. Although his defense counsel made passing reference to his youth at the original hearing, his counsel did not have a sufficient incentive to develop the issue or present additional evidence on it under the existing case law at the time, which was limited to juvenile defendants. Jimenez could present additional evidence and argument at a new hearing, focusing on the "hallmarks" of youth as part of the totality of the circumstances relevant to determining whether he acted with malice. (*Gutierrez, supra*, 58 Cal.4th at p. 1388; see § 1172.6, subd. (d)(3) [parties "may offer new or additional evidence" at the evidentiary hearing].)

For similar reasons, we also conclude that the law of the case doctrine does not apply. " 'The law of the case doctrine holds that when an appellate opinion states a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to through its subsequent progress in the lower court and upon subsequent appeal.' " (*People v. Cooper* (2007) 149 Cal.App.4th 500, 524.) The doctrine prevents parties from seeking appellate reconsideration of an already decided issue in the same case, " 'absent some significant change in circumstances.' " (*Id.* at pp. 524–525.) For the doctrine to apply, the point of law must have been presented and determined by the court, the issue must have been necessary to the prior decision, and application of the doctrine must not result in an unjust decision. (*Id.* at p. 524.) But the doctrine does not apply " 'where the controlling rules of law have been altered or clarified by a decision

17

intervening between the first and second appellate determinations.' " (*People v. Gray* (2005) 37 Cal.4th 168, 197.)

Not only has there been a significant intervening change in the law, but we simply did not decide the legal issue now before us in the prior appeal. We did not decide whether a new evidentiary hearing should be held for the trial court to assess the significance of Jimenez's youth under current case law in deciding his guilt. We only decided Jimenez's sufficiency of the evidence claim, drawing all reasonable inferences in favor of the trial court's ruling. (See *People v. Jimenez, supra*, D079630.) Whether the trial court properly considered Jimenez's youth and brain development in finding him guilty was not raised or decided in the prior appeal, and the law of the case doctrine "does not extend to points of law which might have been but were not presented and determined in the prior appeal." (*Estate of Horman* (1971) 5 Cal.3d 62, 73.) Accordingly, we find that the law of the case doctrine does not bar Jimenez's youthfulness argument.

We therefore turn next to whether the trial court's error in omitting consideration of Jimenez's age was harmless. The parties agree that the *Watson* standard applies, which asks whether it is reasonably probable that a result more favorable to Jimenez would have been reached absent the failure to consider his youth. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) We conclude that it is reasonably probable because there is evidence that Jimenez displayed the "hallmark features" of youth discussed in case law which may be relevant to determining whether he possessed the requisite mental state. (*Gutierrez, supra*, 58 Cal.4th at p. 1388.)

Jimenez was only 19 years old at the time of the crime and still on the lower end of the young adult age range. Presumably, the younger the defendant, the less mature he is. (Cf. *Oliver, supra*, 90 Cal.App.5th at p. 489

18

[observing about 23-year-old defendant that "the presumption of immaturity weakens as a defendant approaches 26"].) Wilson, the actual shooter, was herself only 20 years old at the time. Courts have observed that a youthful offender may be vulnerable to "peer pressure" from his cohorts, and the evidence in this case could support an inference that Jimenez was influenced by Wilson. (See *Pittman, supra*, 96 Cal.App.5th at pp. 403–404, 418 [finding "[i]nferences of immaturity and peer pressure may be drawn" from the fact that the 21-year-old defendant participated in the crime "with two peers who were 16 and 17 years old"]; *Jones, supra*, 86 Cal.App.5th at p. 1093 [noting concern in *Harris* and *Moore* that a youthful offender "was vulnerable to the influence of others and could fail to appreciate the dangers of his activities and his cohort's actions"].) This is especially true given that Jimenez had only recently begun dating Wilson and could have been particularly susceptible to the influence of a new girlfriend.

Importantly, evidence supporting an inference that Jimenez was aware of Wilson's intent to kill or commit a life-endangering act was only circumstantial. (See *Gutierrez, supra*, 58 Cal.4th at p. 1389 [circumstances of offense are relevant, including whether the youthful offender did not kill or intend to kill]; cf. *Oliver, supra*, 90 Cal.App.5th at p. 489 [finding failure to consider youth harmless where evidence showed defendant was "fully aware" that his cohort intended to kill the victim if the opportunity arose]; *In re Harper, supra*, 76 Cal.App.5th at pp. 471–472 [defendant's youth did not change his culpability because evidence showed he knew the plan was to kill the victim].) Jimenez had only known Wilson for less than a month before the offense, and there is no evidence he knew or had reason to know she had a propensity for violence. The evidence also shows that Wilson was motivated by personal animus against an ex-boyfriend that may have had

19

little to do with Jimenez. (See *Keel, supra*, 84 Cal.App.5th at p. 562.) Although other inferences might be drawn, the record at least suggests that Jimenez could have been "swept up in circumstances" beyond his control. (*Oliver*, at p. 489.)

The evidence also shows that Jimenez was less involved in the underlying offense than the defendant in *Jones*, who volunteered to perpetrate the robbery, helped plan it, insisted on taking a loaded gun, was callous toward the victim, and then laughed about the shooting afterwards. (*Jones, supra*, 86 Cal.App.5th at pp. 1088, 1093.) Furthermore, Jimenez may present additional or new evidence on remand that bears on the trial court's youthfulness analysis. Accordingly, as in *Jones*, we conclude it is in the interest of justice to give the trial court a meaningful opportunity to consider Jimenez's youth "as part of the totality of the circumstances germane to determining" whether he acted with malice under current law. (*Id.* at p. 1093.)

We acknowledge we have already found that the evidence presented at the first evidentiary hearing was legally sufficient to support a finding of malice notwithstanding Jimenez's youth. (*People v. Jimenez, supra*, D079630.) We are not suggesting otherwise in this opinion, nor are we expressing any view as to how the trial court should rule on remand. All we are holding is that Jimenez is entitled to a new evidentiary hearing so that the trial court can consider and apply the rapidly developing case law on youth and brain development in determining whether he acted with malice. Because we do not act as a trier of fact, this factual question is not for us to

decide in the first instance.  Accordingly, we reverse the denial order and remand for a new evidentiary hearing applying current law.[5]

## DISPOSITION

The order denying Jimenez's second petition for resentencing is reversed, and the matter is remanded to the trial court with directions to issue an order to show cause, conduct a new evidentiary hearing, and make a new ruling consistent with current law.

BUCHANAN, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.

---

[5]    The People have not argued, as an alternative ground for affirmance, that Jimenez is ineligible for relief at the prima facie stage for reasons other than collateral estoppel or law of the case.  We note that Jimenez's guilty plea to aiding and abetting a second degree murder—based on a charging document that generically charged murder without specifying any particular theory—does not conclusively rule out the possibility that he could only have been convicted of murder under a now invalid natural and probable consequences or felony murder theory.  (See *People v. Flores* (2022) 76 Cal.App.5th 974, 987–992; *People v. Eynon* (2021) 68 Cal.App.5th 967, 976–979; *People v. Rivera* (2021) 62 Cal.App.5th 217, 233–235.)  Even assuming we may consider the preliminary hearing transcript, it does not conclusively foreclose this possibility either.